UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN CUSTOM MACHINES, INC.,

                Plaintiff,

v.

AIT WORLDWIDE LOGISTICS, INC. and
JP GRAHAM TRANSPORT, INC.,

                Defendants.

Case No. 2:20-cv-11644
Hon. Laurie J. Michelson
Mag. R. Steven Whalen

---

## DEFENDANT JP GRAHAM TRANSPORT, INC.'S ANSWER AND AFFIRMATIVE DEFENSES

---

Defendant, JP Graham Transport, Inc. ("JP Graham"), by and through its undersigned counsel, hereby files its Answer and Affirmative Defenses in response to Plaintiff's Complaint [ECF No. 1], and states the following:

## **Parties**

1.     Admitted.

2.     Admitted.

3.     Admitted.

4.     Admitted.

5.     Admitted.

## Jurisdiction and Venue

6.     JP Graham admits that the Carmack Amendment would apply if the subject goods were lost or damaged; JP Graham denies that the subject goods were lost or damaged.

7.     Admitted.

8.     JP Graham admits that personal jurisdiction over JP Graham is proper in this Court. JP Graham denies any remaining allegations intended by Plaintiff in paragraph 8 of the Complaint.

9.     JP Graham denies the allegations set forth in paragraph 9 of the Complaint and refers to its First Affirmative Defense.

## General Allegations

10.     JP Graham is without sufficient knowledge or information to form a belief as to the allegations set forth in paragraph 10 of the Complaint and therefore, denies same.

11.     JP Graham is without sufficient knowledge or information to form a belief as to the allegations set forth in paragraph 11 of the Complaint and therefore, denies same.

12.     JP Graham denies the existence of a dispositive oral contract with AIT on the basis of its knowledge of an existing written contract with AIT; JP Graham

is without sufficient knowledge or information to form a belief as to the remaining allegations set forth in paragraph 12 of the Complaint and therefore, denies same.

13.   JP Graham is without sufficient knowledge or information to form a belief as to the allegations set forth in paragraph 13 of the Complaint and therefore, denies same.

14.   JP Graham admits that it was engaged by AIT to perform motor carrier services related to the subject machine; JP Graham denies the remaining allegations of paragraph 14 of the Complaint.

15.   Denied.

16.   JP Graham admits that on or around May 24, 2019, JP Graham's truck carrying the subject machine crashed near Greenville, South Carolina; JP Graham denies the remaining allegations in paragraph 16 of the Complaint.

17.   JP Graham is without sufficient knowledge or information to form a belief as to the allegations set forth in paragraph 17 of the Complaint and therefore, denies same.

18.   JP Graham admits it was notified about the subject machine being alleged as damaged; JP Graham is without sufficient knowledge or information to form a belief as to the remaining allegations set forth in paragraph 18 of the Complaint and therefore, denies same.

3

19.     JP Graham is without sufficient knowledge or information to form a belief as to the allegations set forth in paragraph 19 of the Complaint and therefore, denies same.

20.     JP Graham is without sufficient knowledge or information to form a belief as to the allegations set forth in paragraph 20 of the Complaint and therefore, denies same.

21.     JP Graham admits it was sent a claim and demand by Plaintiff related to the subject machine; JP Graham is without sufficient knowledge or information to form a belief as to the remaining allegations set forth in paragraph 21 of the Complaint and therefore, denies same.

22.     JP Graham admits such an explanation was included in the claim and demand it received from Plaintiff related to the subject machine; JP Graham is without sufficient knowledge or information to form a belief as to the remaining allegations set forth in paragraph 22 of the Complaint and therefore, denies same.

23.     JP Graham denies being repeatedly given an opportunity to inquire and/or inspect the subject machine; JP Graham is without sufficient knowledge or information to form a belief as to the remaining allegations set forth in paragraph 23 of the Complaint and therefore, denies same.

24.     Admitted.

25.     JP Graham is without sufficient knowledge or information to form a belief as to the allegations set forth in paragraph 25 of the Complaint and therefore, denies same.

26.     JP Graham is without sufficient knowledge or information to form a belief as to the allegations set forth in paragraph 26 of the Complaint and therefore, denies same.

27.     JP Graham admits it received the alleged final repair cost of the subject machine from Plaintiff on the alleged date; JP Graham is without sufficient knowledge or information to form a belief as to the remaining allegations set forth in paragraph 27 of the Complaint and therefore, denies same.

28.     Denied.

Count I: Liability Under the Carmack Amendment (49 U.S.C. § 14706)

29.     JP Graham realleges and incorporates herein its answers to paragraphs 1-28 above, as if set forth fully herein.

30.     JP Graham is without sufficient knowledge or information to form a belief as to the allegations set forth in paragraph 30 of the Complaint and therefore, denies same.

31.     JP Graham admits it is a motor carrier; JP Graham is without sufficient knowledge or information to form a belief as to the remaining allegations set forth in paragraph 31 of the Complaint and therefore, denies same.

32.    JP Graham admits that its truck carrying the subject machine crashed near Greenville, South Carolina; JP Graham is without sufficient knowledge or information to form a belief as to the remaining allegations set forth in paragraph 32 of the Complaint and therefore, denies same.

33.    JP Graham is without sufficient knowledge or information to form a belief as to the allegations set forth in paragraph 33 of the Complaint and therefore, denies same.

34.    Paragraph 34 of the Complaint is a legal conclusion; therefore, no response is required.  To the extent a response is required, paragraph 34 is denied.

35.    JP Graham is without sufficient knowledge or information to form a belief as to the allegations set forth in paragraph 35 of the Complaint and therefore, denies same.

36.    Paragraph 36 of the Complaint is a legal conclusion; therefore, no response is required.  To the extent a response is required, paragraph 36 is denied.

<u>Count II: Breach of Contract Against Defendant AIT</u>

37.    JP Graham incorporates by reference its responses to the allegations in the preceding paragraphs of the Complaint.

38.    Count II does not seek relief against JP Graham and the allegations of paragraph 38 are not directed at JP Graham; therefore, no response is required. To the extent a response is required, paragraph 38 is denied.

39.     Count II does not seek relief against JP Graham and the allegations of paragraph 39 are not directed at JP Graham; therefore, no response is required. To the extent a response is required, paragraph 39 is denied.

40.     Count II does not seek relief against JP Graham and the allegations of paragraph 40 are not directed at JP Graham; therefore, no response is required. To the extent a response is required, paragraph 40 is denied.

41.     Count II does not seek relief against JP Graham and the allegations of paragraph 41 are not directed at JP Graham; therefore, no response is required. To the extent a response is required, paragraph 41 is denied.

42.     Count II does not seek relief against JP Graham and the allegations of paragraph 42 are not directed at JP Graham; therefore, no response is required. To the extent a response is required, paragraph 42 is denied.

43.     Count II does not seek relief against JP Graham and the allegations of paragraph 43 are not directed at JP Graham; therefore, no response is required. To the extent a response is required, paragraph 43 is denied.

44.     Count II does not seek relief against JP Graham and the allegations of paragraph 44 are not directed at JP Graham; therefore, no response is required. To the extent a response is required, paragraph 44 is denied.

45.     Count II does not seek relief against JP Graham and the allegations of paragraph 45 are not directed at JP Graham; therefore, no response is required. To the extent a response is required, paragraph 45 is denied.

<u>Count III: Negligence Against Defendant AIT</u>

46.     JP Graham incorporates by reference its responses to the allegations in the preceding paragraphs of the Complaint.

47.     Count III does not seek relief against JP Graham and the allegations of paragraph 47 are not directed at JP Graham; therefore, no response is required. To the extent a response is required, paragraph 47 is denied.

48.     Count III does not seek relief against JP Graham and the allegations of paragraph 48 are not directed at JP Graham; therefore, no response is required. To the extent a response is required, paragraph 48 is denied.

49.     Count III does not seek relief against JP Graham and the allegations of paragraph 49 are not directed at JP Graham; therefore, no response is required. To the extent a response is required, paragraph 49 is denied.

50.     Count III does not seek relief against JP Graham and the allegations of paragraph 50 are not directed at JP Graham; therefore, no response is required. To the extent a response is required, paragraph 50 is denied.

51.     Count III does not seek relief against JP Graham and the allegations of paragraph 51 are not directed at JP Graham; therefore, no response is required. To the extent a response is required, paragraph 51 is denied.

## AFFIRMATIVE DEFENSES

Having answered the Complaint, JP Graham asserts the following affirmative defenses:

## First Affirmative Defense – Improper Venue

1.      Plaintiff's Complaint is flawed and subject to dismissal because it omits a key and determinative detail — the existence of a written agreement between Defendant AIT Worldwide Logistics, Inc. ("AIT") and Plaintiff Michigan Custom Machine ("MCM"), which written agreement incorporates AIT's standard terms and conditions which includes a mandatory forum selection provision.

2.      At Paragraph 12 of the Complaint, MCM alleges that, "[a]fter completion of the Machine, upon MCM's request, on or around May 23, 2019, Defendant AIT entered into an oral contract with MCM pursuant to which AIT agreed to transport and/or arrange the transportation of the Machine by motor carriage for certain consideration from MCM's facility in Novi, Michigan, to Standard Motor's facility in Greenville, South Carolina." This allegation is, upon information and belief, false.

3.     Upon information and belief, the subject transportation transaction alleged in the Complaint is governed by a Bill of Lading issued by AIT to MCM prior to the movement of the subject machine, and not by either the alleged "oral contract" between MCM and AIT (Paragraph 12 of the Complaint) or the MCM Bill of Lading (attached in Paragraph 15 of the Complaint as Exhibit A).  The AIT Bill of Lading governing the subject transaction is attached hereto as **Exhibit 1** ("the AIT Bill of Lading").

4.     The AIT Bill of Lading contains the following language, "ALL SHIPMENTS ARE SUBJECT TO THE U.S. DOMESTIC TERMS AND CONDITIONS OF WWW.AITWORLDWIDE.COM/TERMS-AND-CONDITIONS AND, WHERE APPLICABLE, ON THE REVERSE SIDE OF THIS BILL, UNLESS OTHERWISE AGREED UPON IN WRITING." (Emphasis in original).  A copy of the terms and conditions to which this language refers is attached hereto as **Exhibit 2** ("the Terms and Conditions").

5.     The Terms and Conditions relevant to this Affirmative Defense are:

    a.  "Customer" in these Terms and Conditions means the party from whom the shipment is received, any party who requested the shipment be transported by AIT, any party having an interest in the shipment, and any party who acts as an agent for any of the above. (Terms and Conditions, Exh. 2, Paragraph 1).

    b.  These Terms and Conditions constitute the contract of carriage between AIT and Customer; and these Terms and Conditions shall supersede and prevail over any conflicting terms and conditions contained on any bill of lading, waybill, shipping document, shipping

10

receipt, or other purported contract of transportation (unless executed by AIT and Customer and, by its terms, supersedes these Terms and Conditions) under which any shipper, carrier, person or entity undertakes to tender freight to AIT for transportation. (Terms and Conditions, Exh. 2, Paragraph 1).

c. These Terms and Conditions shall be construed according to the applicable federal laws of the United States and laws of the State of Illinois, without giving effect to that State's conflict of laws principles. These Terms and Conditions shall apply to all claims, regardless of whether said claims are founded in tort, contract, or otherwise. **Any action arising from or related to these Terms and Conditions shall be prosecuted in the state or federal courts of DuPage or Cook County, State of Illinois, USA, to the exclusion of any other venue, and the parties hereby consent to the exclusive jurisdiction of said courts.** The obligations in this paragraph shall survive termination of these Terms and Conditions. (Terms and Conditions, Exh. 2, Paragraph 5.9; "the forum selection provision") (Emphasis added).

6.      Upon information and belief, MCM is a sophisticated entity that participates in the shipment of goods in interstate commerce frequently.

7.      Upon information and belief, MCM has been involved in over 80 shipping transactions with AIT, and knows or reasonably should know of the Terms and Conditions governing each and every transaction to which AIT involves itself.

8.      At Paragraph 9, MCM's Complaint asserts that "[v]enue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendants transacted business in the State of Michigan and this District and are subject to personal jurisdiction in this District. Venue is also proper in this Court pursuant to 49 U.S.C. §

14706(d)(1) because Defendants operate in Michigan." This is the only provision related to venue asserted in MCM's Complaint, and it fails to establish proper venue because it makes no allegation bearing on why the forum selection provision is invalid or unenforceable.

9.      As a motor carrier contracted by AIT, JP Graham is entitled to assert the Terms and Conditions of the AIT-MCM contract (inclusive of the forum selection provision) because such terms and conditions govern the entire contract of carriage between AIT and MCM through final delivery.

10.     MCM bears the burden of proving that venue is proper and the Court may examine facts outside the complaint when making such consideration. MCM's Complaint fails to meet its burden and should be dismissed for improper venue.

## Second Affirmative Defense – Limitation of Liability

11.     JP Graham incorporates by reference the allegations in Paragraphs 3 – 7 and 9 (including subparagraphs) of its above First Affirmative Defense.

12.     In the event JP Graham is deemed liable for the damage caused to the subject machine, JP Graham's liability is limited by a provision of the Terms and Conditions which is applicable to JP Graham as a downstream motor carrier involved in the subject transaction.

13.    Paragraph 2.2 of the Terms and Conditions, in relevant part, provides:

**AIT's liability for loss or damage to any shipment of new products or portion thereof is limited to the lesser of (A) $0.50 per pound per piece lost or damaged with a minimum of $50.00 per shipment or, if a higher value is declared at time of shipment and excess value charges of $0.65 for each $100.00 of declared value is paid, the declared value;** (B) the replacement value of an item of like kind and quality; (C) Customer's cost of the article or articles lost or damaged; or (D) the repair cost in the event that a claimed item can be repaired. If a claimed damaged item, whether new or used, cannot be repaired, Customer shall provide, at its own expense, a third party assessment and/or technician report which details the extent of the damage and why the item is unable to be repaired. Notwithstanding the foregoing, articles and/or shipments with a declared value in excess of $25,000 will not be accepted for transportation unless Customer makes advance arrangements therefor with AIT by notifying the local AIT office handling the shipment on behalf of Customer via electronic notification, email or U.S. postal service. Moreover, in no event shall AIT's liability for aggregate losses at any one time at any one place exceed $100,000 unless mutually agreed upon in writing by both parties prior to tender of the shipment(s). (Emphasis added).

14.    MCM has not alleged in the Complaint that it declared a value of the subject machine, and neither the MCM Bill of Lading (Exhibit A to the Complaint), nor the AIT Bill of Lading (Exhibit 2 hereto) demonstrate a declared value by MCM.

15.    As a sophisticated shipper, MCM was aware of, and was reasonably afforded, its opportunity to declare a value of the subject machine and to select a different level of liability to govern the shipment of the subject machine, all of which would have likely resulted in an alternative and higher freight rate being charged to MCM.

13

16.     By failing to assert a value of the subject machine in any of the Bills of Lading, in any communication with JP Graham or, upon information and belief, in any communication with AIT, MCM made its choice as to the limitation of liability selected by tendering the subject machine to Defendants and voluntarily accepting the benefit of the reduced freight rate for the shipment, after having been put on notice of the Terms and Conditions.

17.     As a carrier contracted by AIT, JP Graham is entitled to rely on the limitation of liability set forth in the Terms and Conditions because it governs the entire contract of carriage through completion.

### Third Affirmative Defense – Intentional Failure to Disclose High Value

18.     JP Graham incorporates by reference the allegations in Paragraphs 3 – 7 and 9 (including sub-paragraphs) of its above First Affirmative Defense and Paragraphs 14 – 16 of its Second Affirmative Defense.

19.     MCM is a sophisticated shipper of goods and was the only party in a position to know the value of the subject machine at the time of its shipment.

20.     Despite being the only party in this position, MCM made no declaration of the value of the subject machine.

21.     Had JP Graham known of the alleged value of the subject machine at the time of its shipment, the freight rate to deliver the subject machine would have

14

been significantly higher, due largely to the cost of obtaining additional liability insurance for such a shipment.

22.　MCM knew or should have known that the freight rate it was being charged for the shipment of the subject machine was related to the value of the subject machine.

23.　By failing to declare a value of the subject machine in any communication with any other party to the transportation transaction, MCM cannot now seek to hold other parties liable for information it concealed and for a loss which the other parties could not have expected.

24.　MCM is barred from holding JP Graham liable because of its own misconduct in failing to disclose the alleged high value of the subject machine.

## Fourth Affirmative Defense – Failure to State a Claim

25.　MCM has failed to state claims against JP Graham upon which relief can be granted.

## Fifth Affirmative Defense – Other Cause

26.　The loss and damages alleged in the Complaint, if any, were caused by MCM, AIT and/or any other third parties who had or took possession of the subject machine prior to JP Graham's possession and over whom JP Graham had no control, and for whose acts or omissions JP Graham is not responsible or liable.

## Sixth Affirmative Defense – Actual Damages Limitation

27.    To the extent MCM seeks the recovery of special or consequential damages, they are not recoverable under the terms and conditions of service agreed upon by the parties and/or the shipping documents issued in connection with the cargo in question, and/or under the controlling applicable law.

## Seventh Affirmative Defense – Pre-Existing Damage

28.    The losses and damages alleged in the Complaint, if any, were caused by a pre-existing condition and/or other conditions beyond the control of JP Graham and for which JP Graham is not responsible or liable.

## Eighth Affirmative Defense – Failure to Mitigate

29.    Any damages are the result of MCM's failure to mitigate their damages, if any, as required by applicable law, and other contracts, bills of lading, tariffs and classifications, and the rules set forth therein, governing the relationship between the parties.

JP Graham reserves the right to supplement the foregoing and raise additional defenses as may appear during the progress of this case to the fullest extent allowed under the controlling applicable law.

**WHEREFORE**, JP Graham Transport, Inc., respectfully requests that this Court enter an order granting judgment in favor of JP Graham Transport, Inc. and

to grant any such further relief in JP Graham Transport, Inc.'s favor as this Court

deems just and equitable.

Dated:    August 25, 2020

/s/ Kristen M.J. Johnson
Kristen M.J. Johnson, Esq.
TAYLOR & ASSOCIATES,
ATTORNEYS AT LAW, P.L
20 3rd Street SW, Suite 209
Winter Haven, FL 33880
(863) 875-6950 (tel)
(863)875-6955 (fax)
kjohnson@taylorlawpl.com
efiling@taylorlawpl.com
lroberts@taylorlawpl.com

*Counsel for Defendant JP Graham*

Adam C. Zwicker (P73672)
GALLAGHER SHARP LLP
211 W. Fort St., Ste. 660
Detroit, MI 48226
(313) 962-9160 / 9167 Fax
azwicker@gallaghersharp.com

*Local Rule 83.20 Counsel for
Defendant JP Graham*

## CERTIFICATE OF SERVICE

This is to certify that on August 25, 2020, the forgoing document was filed
with the Clerk of Court using the CM/ECF System. Notice will be sent to all
counsel of record and/or parties by operation of the Court's electronic case filing
system. Parties may access this through the Court's electronic case filing system.

/s/ Kristen M.J. Johnson

EXHIBIT 1

Due Date: 5/24/19

Tracking Info: www.aitworldwide.com or 800-775-4248

www.aitworldwide.com

| DATE SHIPPED | ORIGIN | SELLING STATION | VIA | DEST | FLIGHT | AIR BILL NO. |
|---|---|---|---|---|---|---|
| 5/23/2019 | DTW-C | DTW | | GSP-A | | 19898881 |

SHIPPER WILL COMPLETE ALL ITEMS IN SHADED AREAS

| SHIPPER NUMBER | SHIPPER REFERENCE NUMBER | CONSIGNEE NUMBER | CONSIGNEE P.O. NUMBER |
|---|---|---|---|
| MICHCUSTOM | | STANDARMOT | |

SHIPPER INFORMATION
MICHIGAN CUSTOM MACHINES, INC.
22750 HESLIP DRIVE
NOVI, MI 48375  UNITED STATES

CONSIGNEE INFORMATION
STANDARD MOTOR PRODUCTS
5150 PELHAM ROAD
GREENVILLE, SC 29615  UNITED STATES

CONTACT: JASON STUMP
PHONE NUMBER: 248-347-7900

CONTACT:
PHONE NUMBER: 854-297-1700

CHARGES (CHECK ONE) UNLESS OTHERWISE INDICATED, CHARGES ARE PREPAID
[X] PREPAID   [ ] COLLECT   [ ] C.O.D.   [ ] 3rd PARTY

DECLARED VALUE $
UNLESS A HIGHER VALUE IS DECLARED AND APPLICABLE CHARGES PAID, THE LIABILITY OF AIT SHALL BE LIMITED PER THE U.S. DOMESTIC TEAMS AND CONDITIONS OF CARRIAGE PUBLISHED AT WWW.AITWORLDWIDE.COM/TERMS-AND-CONDITIONS AND, WHERE APPLICABLE ON THE REVERSE SIDE OF THE BILL

3RD PARTY NUMBER: MICHCUSTOM
3RD PARTY: MICHIGAN CUSTOM MACHINES, INC.
STREET ADDRESS: 22750 HESLIP DRIVE
CITY, STATE AND ZIP CODE: NOVI, MI 48375
CONTACT: JASON STUMP
PHONE NUMBER: 248-347-7900

| DIMENSIONS | | | |
|---|---|---|---|
| PCS | L | W | H |
| 1 | 150 | 75 | 95 |

| NO. OF PACKAGES | DESCRIPTION AND MARKS | WEIGHT |
|---|---|---|
| 1 | MACHINERY | 8000 |

SERVICE REQUESTED
[ ] SAME DAY  [X] NEXT DAY  [ ] SECOND DAY  [ ] THREE DAY
[ ] DEFERRED  [ ] OTHER (SPECIFY BELOW)
DELIVERY DUE TIME 15:00

QUOTE NUMBER: 5509
CUBIC WEIGHT:

C.O.D. AMT.
C.O.D. FEE
TOTAL CHARGES

SPECIAL INSTRUCTIONS
STEP DECK COMESTOGA
DELIVER BY  3:00pm

I certify that this cargo does not contain any unauthorized explosives, incediaries, or hazardous materials. I consent to a search of this cargo. I am aware that this endorsement and original signature, along with other shipping documents, will be retained on file for a minimum of thirty days.

Shipper / Representative          Date _____
Signature: x _____
Print Name x _____

**THANK YOU FOR USING AIT WORLDWIDE LOGISTICS**

MAWB:          **RECEIVED BY CONSIGNEE IN GOOD ORDER UNLESS NOTED BELOW**

"ANY CLAIM FOR DAMAGE TO CONSIGNEE'S PREMISES INCURRED DURING DELIVERY WILL BE DEEMED UNTIMELY UNLESS NOTED ON THIS DELIVER RECEIPT OR REPORTED TO AIT WORLDWIDE LOGISTICS, INC. WITHIN 24 HOURS OF DELIVERY".

CONSIGNEE SIGNATURE X _____
PLEASE PRINT: _____
COMPANY: _____
DATE: _____ TIME: _____

"ALL SHIPMENTS ARE SUBJECT TO THE U.S. DOMESTIC TERMS AND CONDITIONS OF WWW.AITWORLDWIDE.COM/TERMS-AND-CONDITIONS AND, WHERE APPLICABLE, ON THE REVERSE SIDE OF THIS BILL, UNLESS OTHERWISE AGREED UPON IN WRITING."

03   (IN ORDER TO EXPEDITE, SHIPMENT MAY BE DIVERTED TO MOTOR OR OTHER CARRIER AS PER TARIFF RULE UNLESS SHIPPER GIVERS OTHER INSTRUCTIONS HEREON)
DELIVERY RECEIPT

EXHIBIT 2

**AIT WORLDWIDE LOGISTICS, INC.**
**U.S. DOMESTIC TERMS AND CONDITIONS OF CONTRACT OF CARRIAGE**

**1.  Introduction**

AIT Worldwide Logistics, Inc. ("AIT") is licensed as and operates as a Freight Forwarder and Indirect Air Carrier.  In tendering shipment(s) for surface or air transportation within the United States or to or from Puerto Rico and/or other U.S. Territories, Customer agrees to be bound by these U.S. Domestic Terms and Conditions of Contract of Carriage ("Terms and Conditions"); and indicates its understanding that the AIT waybill, bill of lading or other shipping document utilized is non-negotiable.  (Shipments transported between the United States and Puerto Rico and/or other U.S. Territories in whole or in part by ocean shall be governed by the AIT Ocean Terms and Conditions published at www.aitworldwide.com/terms-and-conditions.) No agent or employee of the parties may alter these Terms and Conditions, unless in writing and signed by both parties.  NOTE:  "Customer" in these Terms and Conditions means the party from whom the shipment is received, any party who requested the shipment be transported by AIT, any party having an interest in the shipment, and any party who acts as an agent for any of the above.

These Terms and Conditions constitute the contract of carriage between AIT and Customer; and these Terms and Conditions shall supersede and prevail over any conflicting terms and conditions contained on any bill of lading, waybill, shipping document, shipping receipt, or other purported contract of transportation (unless executed by AIT and Customer and, by its terms, supersedes these Terms and Conditions) under which any shipper, carrier, person or entity undertakes to tender freight to AIT for transportation.  The signature of AIT's driver or the driver of any of its agents on any such document shall be solely for the convenience of the party tendering such shipment and shall not constitute an acceptance by AIT or AIT's agent of any terms which vary from these Terms and Conditions.  In the event that a shipment is tendered on a domestic air waybill that is intended for international transport, then the provisions of Section 5.6 below shall apply.

Customer warrants and represents to AIT that the information set forth on the face of the AIT waybill, bill of lading(s) or other shipping document or the information supplied to AIT electronically regarding any shipment(s) is complete and accurate; and that each package and/or article in the shipment(s) is properly and completely described including correct weight and measurement, is adequately packaged to protect the enclosed goods from loss or damage with ordinary care in handling, is properly classified, described, packaged, marked and labeled and is in proper condition for transportation according to the applicable regulations of the U.S. Department of Transportation and the Transportation Security Administration, including without limitation all regulations governing the transportation of hazardous materials, regardless of mode of transport based on 49 C.F.R. Parts 171, 172 and 173 or the current edition of the International Air Transport Association (IATA) Dangerous Goods Regulations.  Customer's violation of any of these warranties will excuse AIT from any liability whatsoever for loss of or damage to any item(s) incurred as a result of such violation and shall also cause Customer to be liable to AIT for all claims, fines, penalties, damages, costs or other sums, including reasonable attorneys' fees, incurred by AIT as a result of such violation.

**2.  Liability**

2.1  At time of delivery, the consignee must note on the delivery receipt any exceptions to the count or condition of the shipment or the shipping containers.  Where otherwise liable under these Terms and Conditions, AIT shall not be liable for concealed loss or damage not noted on the delivery receipt and/or not consistent with visible signs of damage to the outside shipping container(s), unless Customer provides written notice to AIT within 48 hours of delivery (or verbal notice in the case of damage to perishable commodities) and is able to prove that such loss or damage occurred while the shipment was in AIT's or its agent's possession.  A clear delivery receipt shall be prima facie evidence of ordinary care in handling and receipt of the shipment(s) in full and in good condition.  Notations such as "subject to inspection or count" will not be considered evidence of damage or shortage.

2.2  AIT's liability for loss or damage to any shipment of used products or portion thereof is limited to the lesser of (A) $0.10 per pound per piece lost or damaged with a minimum of $10.00 per shipment or, if a higher value is declared at time of shipment and excess value charges of $0.65 for each $100.00 of declared value is paid, the declared value; (B) the replacement value of an item of like kind and quality; (C) Customer's cost of the article or articles lost or damaged; or (D) the repair cost in the event that a claimed item can be repaired.  AIT's liability for loss or damage to any shipment of new products or portion thereof is limited to the lesser of (A) $0.50 per pound per piece lost or damaged with a minimum of $50.00 per shipment or, if a higher value is declared at time of shipment and excess value charges of $0.65 for each $100.00 of declared value is paid, the declared value; (B) the replacement value of an item of like kind and quality; (C) Customer's cost of the article or articles lost or damaged; or (D) the repair cost in the event that a claimed item can be repaired.  If a claimed damaged item, whether new or used, cannot be repaired, Customer shall provide, at its own expense, a third party assessment and/or technician report which details the extent of the damage and why the item is unable to be repaired.  Notwithstanding the foregoing, articles and/or shipments with a declared value in excess of $25,000 will not be accepted for transportation unless Customer makes advance arrangements therefor with AIT by notifying the local AIT office handling the shipment on behalf of Customer via electronic notification, email or U.S. postal service.  Moreover, in no event shall AIT's liability for aggregate losses at any one time at any one place exceed $100,000 unless mutually agreed upon in writing by both parties prior to tender of the shipment(s).

2.3  Should AIT inadvertently accept for transportation (A) any article(s) described in Section 3.5 herein or (B) articles with a declared value in excess of $25,000 as to which Customer has not made advance arrangements with AIT or secured AIT's approval, as required in Section 2.2 above, AIT's liability for loss or damage thereto shall be limited pursuant to the terms of Section 2.2 for shipments on which no excess value has been declared.

2.4  It is agreed upon and understood that the C.O.D. amount of the shipment stated on the face of the shipping document(s) or transmitted to AIT via electronic means, if applicable, does not constitute the declared value of the shipment.

2.5  Where Customer seeks to declare a value for a shipment consisting of more than one piece, it shall be Customer's responsibility to have a numbered label affixed to each such piece and then to declare a value correlating to each such number in the space provided on the face of the shipping

document(s).  Failing compliance with this requirement, AIT's liability for loss or damage to any part of such shipment shall be limited to the average declared value of the shipment times the number of the piece(s) lost or damaged.

2.6 Customer understands and agrees that the rates charged by AIT for services do not include insurance or other compensation for loss/damage other than as expressly provided herein.  AIT may assist Customer, upon Customer's request, with the placement of cargo insurance.   Unless requested by Customer in writing in advance of shipment, and such request is confirmed in writing by AIT, AIT is under no obligation to procure insurance on Customer's behalf.   Any such cargo insurance procured by AIT on Customer's behalf shall be subject to the applicable policy terms thereof, and AIT shall not be liable if, for any reason, Customer is unable to recover a loss, in whole or in part, from the insurer under said policy, even if the premium charged by the insurer is different from AIT's charges to Customer for the coverage.   Should the cargo insurance coverage made available by AIT be insufficient to protect Customer's interests, Customer is encouraged to consult an insurance broker of its own choosing so as to purchase insurance elsewhere.

**3.   Liabilities Not Assumed**

3.1 AIT SHALL NOT BE LIABLE IN ANY EVENT FOR ANY SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES, INCLUDING, BUT NOT LIMITED TO, LOSS OF PROFITS, INCOME, INTEREST, UTILITY OR MARKET, REGARDLESS OF WHETHER OR NOT AIT HAD KNOWLEDGE THAT SUCH DAMAGES MIGHT BE INCURRED.

3.2 Due to the inherent nature of the transportation business, AIT does not guarantee pick-up, transportation or delivery by a special date or a special time, and shall not be liable for any claimed delay in pick-up, transportation, delivery or consequences resulting therefrom.

3.3 AIT shall not be liable for loss, damage, delay or monetary losses of any type caused by: Acts of God, including, but not limited to, weather events; acts of public authorities acting with actual or apparent authority; strikes or labor disputes; mechanical failures; aircraft failures; civil commotions or riots; acts or omissions of customs or quarantine officials; the nature of the freight or any defects thereof; acts of public enemies; hazards incident to a state of war; acts of terrorism; or acts, defaults, or omissions of Customer, the shipper or the consignee, including but not limited to improper packing, incorrect marking or incomplete or inaccurate shipping instructions, or failure to observe these Terms and Conditions or the rules relating to freight not acceptable for transportation or freight acceptable only under certain conditions as set forth in Section 3.5 below.

3.4 AIT shall not be liable for loss or damage to exterior packaging or outside shipping containers.

3.5 AIT will not accept for transportation any shipment or commodity prohibited by law.  In addition, the following items are not acceptable for carriage and will not be accepted by AIT:  original works of art; antiques; bonds; coins of any kind, currency and currency equivalents; furs and fur clothing; gems and stones (cut or uncut); industrial diamonds; gold or silver jewelry (other than costume jewelry); pearls; precious metals;  negotiable securities; time sensitive written materials (such as contract bids and proposals); software licenses; electronic data (i.e., data stored on computers, discs, credit cards, etc.)**;** household goods and personal effects; one-of-a-kind articles, models or prototypes; valuable rugs (i.e., oriental rugs or Persian rugs); original prints and lithographs; bagged goods; cement; fertilizer; fishmeal; bulk commodities; fresh fruits; fresh vegetables; live animals; live plants; human remains of any kind; nuclear fuels; confectionery chocolates; ceramics; pottery;

porcelain; marble; granite; china; glassware; fluorescent tubes; neon lighting; neon signs; x-ray tubes; glass mirrors; windows; glass or other inherently fragile items; and such other articles as provided in AIT's governing tariffs, individual contracts and/or service guide.  Except as otherwise provided in these Terms and Conditions, no employee or agent of AIT has any authority to accept such articles for transportation or to waive the limitations contained herein.

3.6 AIT agrees to move shipments of used products under the following conditions: AIT shall not be liable for any concealed loss and/or damage not noted on the delivery receipt at the time of delivery.  AIT shall not be liable for any electrical and/or mechanical derangement, rust, oxidation, discoloration, or cosmetic damage of any kind to the used product shipped.  The shipment(s) must be properly packaged and/or crated in order to withstand ordinary care in handling during transit.

**4.  Claims Process**

4.1 Claims for loss or damage must be filed in writing with AIT within nine (9) months after the delivery of the shipment, except that claims for failure to make delivery must be filed within nine (9) months after a reasonable time for delivery has elapsed.  In the case of claims for loss or damage to shipment(s), AIT must be allowed the opportunity to make inspection of the shipment(s), container(s), and packaging material(s) at the place of delivery.  Failure to afford AIT the opportunity to inspect claimed product and all related packaging shall be a bar to recovery of any claim.

4.2 In the event AIT approves a damage claim for payment, AIT shall be entitled to possession of the portion of the shipment for salvage for which claim was made and payment approved, with the exception of food products that may cause harm if sold in a damaged state.  The failure to provide the damaged goods to AIT shall be a bar to recovery of any claim.

4.3 Overcharge claims must be filed in writing with AIT within 180 days of Customer's receipt of the original bill from AIT; and, provided that such a claim has been timely filed, any action or proceeding by Customer against AIT to recover such charges shall be commenced not more than eighteen (18) months after Customer's receipt of AIT's applicable invoice.

4.4 Any claim for damage to Customer's, the shipper's and/or the consignee's premises incurred during performance of services by AIT will be deemed untimely unless noted on the bill of lading or delivery receipt or reported to AIT in writing within 24 hours of service at that location.  Failure of Customer, the shipper and/or the consignee to notify AIT's Corporate Office of any such damage in a timely manner will be grounds for declination of any such claim; and Customer, the shipper and/or the consignee will be barred from pursuing any such claim in a court of law or otherwise.  In order for AIT to consider any such claim, AIT must be allowed the opportunity to make inspection of any property damage.

4.5 No claims will be considered until all transportation charges have been paid, except in instances where no part of the shipment has been delivered.  Claims may not be deducted from transportation charges and no claims may be deducted from any other charges owed to AIT.  AIT reserves the right to deduct claim payments from open Customer balances.

4.6 Formal claims, notices, and all related correspondence shall be filed with AIT at P.O. Box 66730, Chicago, IL  60666-0730 or emailed to Claimsadmin@aitworldwide.com.

V.10.15.2015

**5.  Legal**

5.1 Customer, the shipper and the consignee shall be liable jointly and severally for all charges incurred in connection with the transportation and/or handling of any shipment tendered to AIT; and shall pay or indemnify AIT for claims, fines, penalties, damages, costs (including but not limited to those for storage, handling, reconsignment, return of freight to the shipper, and other services) or other sums which may be incurred by AIT by reason of any violation of these Terms and Conditions or any other default of Customer, the shipper or the consignee or their agents.  AIT shall have a continuing general lien upon all goods and documents in its or its agent's possession, custody, or control or en route for all amounts owed to AIT, including all charges, expenses, duties, fines, penalties, or advances in connection with any shipment or other transaction involving Customer.  This lien supplements AIT's other rights under any other agreements and/or applicable law and can be extinguished only by full and indefeasible payment of all secured amounts.  If Customer defaults in the payment of any such amounts, then AIT may sell such property by public auction or private sale.  Any notice required to be given by AIT of a sale or other intended action with respect to any goods or documents, made by sending same to Customer at least ten (10) days prior to any proposed action, shall constitute fair, reasonable and adequate notice to Customer.  Customer is liable for any deficiency from any sale.

5.2 All invoices not paid within 30 days of invoice date will be subject to a charge of 1-1/2% per month.  AIT shall perform a credit worthiness assessment and assign a credit limit determined by Customer's financial worthiness.  AIT may at any time reassess the credit limit of Customer.  An unfavorable change in the credit limit may result in a lien on goods and documents as described in Section 5.1.

5.3 Customer, the shipper and the consignee shall hold AIT and its agents harmless for loss, damage, delay or any monetary losses which are a result of the performance of auxiliary services (services which are performed prior or subsequent to transportation, including, but not limited to, local cartage, crating, uncrating, packing, warehousing, and unpacking) performed or arranged directly by Customer, the shipper or the consignee and not by AIT.  In the event that auxiliary services are performed by AIT or its agents, under no circumstances will the liability of AIT for any monetary loss resulting from the performance of such services be greater than the liability contained in these Terms and Conditions.

5.4 Customer, the shipper and the consignee agree that any assistance they or their agents, employees, contractors, or other affiliated parties may provide to AIT during the pick-up, transportation or delivery process will be at their own risk.  Customer, the shipper and the consignee hereby assume the responsibility of notifying any related parties of the risks of assisting in any service being provided by AIT.  Customer, the shipper and/or the consignee shall indemnify and hold harmless AIT from any liability or claims resulting from the respective participation or assistance of Customer, the shipper and/or the consignee or their agents, employees, contractors, or other affiliated parties in any service being provided by AIT.

5.5 Should AIT prevail in any legal action for the enforcement of these Terms and Conditions or collection of any sums due and payable under these Terms and Conditions, AIT shall be entitled to reasonable attorney's fees and costs.

5.6 In the event shipment(s) are international shipment(s), the liability of AIT shall be limited to the amounts set forth in the Warsaw Convention, as amended, or other government international

treaty, law, statute, regulation, order or other requirement applicable to such shipment, and the applicable AIT terms and conditions as posted at www.aitworldwide.com/terms-and-conditions shall apply to any shipment(s) or portion thereof which is not governed by said government laws, treaties, statutes or regulations.  AIT accepts the domestic shipping document(s) as Customer's letter of instruction with authorization to prepare and sign on Customer's behalf an international shipping document.

5.7  In the event a shipment is a warehouse shipment, meaning that the product is being stored by AIT for 30+ days, then AIT's "Warehouse Liability Contract Terms and Conditions" posted at www.aitworldwide.com/terms-and-conditions shall apply once the product is placed in storage; AIT accepts the waybill, bill of lading or other shipping document as a "Warehouse Receipt" with authorization to prepare and sign on Customer's behalf a warehouse document; and the liability of AIT shall be that of a storage facility, subject to the Liability and Claim provisions of its "Warehouse Liability Contract Terms and Conditions," and not a freight forwarder, at the commencement of storage.

5.8  In the event that Customer elects to use AIT's MyLTL Service, Customer hereby agrees that the terms of AIT's MyLTL Service Agreement and those set forth in Section 8 below will supersede any terms otherwise conflicting with these Terms and Conditions, including all terms related to claims filing, processing and liability.

5.9  These Terms and Conditions shall be construed according to the applicable federal laws of the United States and laws of the State of Illinois, without giving effect to that State's conflict of laws principles.  These Terms and Conditions shall apply to all claims, regardless of whether said claims are founded in tort, contract, or otherwise.  Any action arising from or related to these Terms and Conditions shall be prosecuted in the state or federal courts of DuPage or Cook County, State of Illinois, USA, to the exclusion of any other venue, and the parties hereby consent to the exclusive jurisdiction of said courts.  The obligations in this paragraph shall survive termination of these Terms and Conditions.

5.10   Section headings have been included in these Terms and Conditions for convenience of reference only and are not to be considered part of, or to be used in interpreting, these Terms and Conditions.

**6.  Service**

6.1  Rates and charges for Customer's shipments will be based on actual or dimensional weight, whichever is greater.  Customer is responsible to provide accurate weight and measurements for its shipments.  Shipments are subject to re-weigh and re-measurement by AIT to confirm accuracy.

6.2  Collect on Delivery (C.O.D.) service is provided by AIT as a courtesy under the following conditions: (A) Customer must clearly identify the shipment as a C.O.D. shipment on the shipping document(s) and enter the amount to be collected in the C.O.D. Amount box on the shipping document(s) or notify AIT of the amount to be collected in writing by email or electronically prior to tendering shipment to AIT; (B) Customer must clearly specify the type of payment to be received (e.g., cash, check, money order or cashier's check) in the Special Instructions box on the shipping document(s); (C) each shipping container must be clearly marked C.O.D. and the amount to be collected must be marked on the side of the container containing the address label; and (D) AIT and Customer agree

V.10.15.2015

that AIT does not guarantee or verify that a check, money order, cashier's check or other such financial instrument is valid or negotiable. All payments are collected at Customer's risk. In the event that AIT fails to collect the requested C.O.D. amount, Customer's sole recourse shall be against the party from whom the amount was originally due, and Customer shall release AIT from all liability related to payments not collected.

6.3 Unless prior arrangements are made, the acceptance of cash by AIT and its agents for payment of freight charges and / or C.O.D. amounts is limited to a maximum of $1000.00 per shipment and / or stop.

6.4 AIT shall have the right to: (A) substitute alternate carriers or other means of transportation and (B) select the routing or deviate from that shown on the bill of lading(s); and no substitution, rerouting or deviation deemed by AIT to be reasonable shall serve to invalidate any otherwise applicable limitation of liability. AIT shall use reasonable care in its selection of third parties, or in selecting the means, route and procedure to be followed in the handling, transportation, clearance and delivery of a shipment. AIT is authorized to select and engage carriers, truckers, forwarders, customhouse brokers, agents, warehousemen and others as required to transport, store, deal with and deliver the shipment(s).

6.5 In the event of refusal of a shipment by a consignee, or in the event that AIT, for any reason, is unable to deliver a shipment, AIT shall hold the shipment and provide notice to Customer of such non-delivery. Customer shall, within twenty-four (24) hours of receipt of said non-delivery notice (or by 5:00 pm local time on the following business day in instances of weekend/holiday notice), provide AIT with instructions to re-deliver, return, or divert the shipment to an alternate delivery address. Should Customer fail to provide such instructions within the timeframe proscribed, or affirmatively instruct AIT to store the shipment, the liability of AIT with respect to such shipment shall become that of a warehouseman, and the AIT North American Warehousing Terms and Conditions, as published at www.aitworldwide.com/terms-and-conditions, shall govern the storage of said shipment. Should Customer fail to provide disposition instructions for any non-delivered shipment within three (3) business days from the date of receipt of notice of non-delivery, such shipment shall be considered abandoned, and the original notice of non-delivery shall be deemed a notice by AIT of its intent to exercise lien rights pursuant to Section 5.1 hereto, thereby allowing for the sale of such shipment at the expiration of the referenced ten (10) day notice period. Customer shall be responsible for all charges related to storage, re-delivery, return, and/or other related services arising out of the non-delivery of a shipment.

**7. Security, Compliance, Inspection**

7.1 Shipments are subject to security controls by carriers and, where appropriate, by government agencies.

7.2 Copies of shipping documents will be retained by AIT for two years.

7.3 Shipments are subject to inspection by AIT at AIT's option to confirm weight, density, description and/or security clearance.

7.4 The TSA requires that AIT refuse to offer air transportation of any cargo where the shipper/customer does not consent to screening of the cargo. The TSA considers all cargo tendered for air transportation subject to screening/search by the forwarder, air carrier or the TSA. AIT, the

air carriers and the TSA may conduct screening of cargo from the date of the applicable shipping document.  AIT shall not be liable for loss, damage or delay due to opening of cargo, resulting physical inspection or repackaging arising out of any such screening.  This consent shall remain in effect for all cargo tendered to AIT.  49 USC § 114 authorizes the collection of certain information pertaining to Customer.  The information provided will be used to qualify Customer as a possible "known shipper".   Providing this information is voluntary; however, failure to provide the information will prevent qualifying as a known shipper.  This information will be disclosed to TSA personnel and contractors or other agents including IACs in the maintenance and operation of the known shipper program.  TSA may share the information with airport operators, foreign air carriers, IACs, law enforcement agencies and others in accordance with 5 USC § 552a.  For additional details, see the system of records notice for the Transportation Security Threat Assessment System (DHS/TSA 002) published in the Federal Register.  Any fraudulent or intentionally false statement or certificate may be subject to both civil and criminal penalties under 49 CFR Parts 1540 and 1548 and 18 USC § 1001, in addition to those penalties that may arise as a result of violations.

7.5 It is Customer's responsibility to know and comply with all licensing, classification, valuation, marking and other customs requirements, laws, regulations, and rulings enforced by the U.S. and any country having jurisdiction over a shipment, the laws and regulations of any applicable governmental agency, including but not limited to the U.S. Food and Drug Administration, and all other requirements, laws and regulations of any applicable country or governmental agency.  AIT shall not be responsible for action taken, liquidated damages, or fines or penalties assessed by any governmental agency against a shipment because of the failure of Customer to comply with the laws, requirements or regulations of any country or governmental agency or with a notification issued to Customer by any such agency.

## 8.  LTL Carrier Selection Service Agreement (MyLTL)

8.1 In the event AIT offers to Customer its Less-than-Truckload (LTL) carrier-selection service, herein referred to as "MyLTL," AIT will supply Customer with login information to the MyLTL web-based application.   AIT makes no warranties, express or implied, including, without limitation, warranties of merchantability or fitness for a particular purpose, with regard to the MyLTL website, information provided on the website, or transactions conducted on the website. Notwithstanding anything herein to the contrary, all shipments tendered via MyLTL are brokered shipments on which AIT accepts no cargo liability, and are subject to the terms and conditions of the selected carrier, as outlined in this Section 8.

8.2 Customer agrees that all user I.D.'s, passwords and information viewed on the website shall be kept in strict confidence by all persons receiving access, and Customer warrants that no person shall in any way attempt to view information other than that permitted by the limited access granted, or attempt to modify any aspect of the website.  Customer also agrees that it shall not knowingly populate the website with data that is inaccurate, or in any way corrupted so as to cause damage to the website or any of the other data situated on the website.  Customer further agrees to indemnify and hold AIT harmless from any and all damages, costs, actions, causes of action, regardless of nature, including but not limited to court costs and attorney's fees, which may arise from, out of or in connection with any act or omission of any person

(whether or not an employee or agent of Customer) who gains access to, alters, or adds any data or information on the website as a direct or indirect result of the access granted to Customer by AIT.  Customer acknowledges that AIT reserves the right to terminate any and all access to the website granted to any person pursuant to this or any other Agreement, which termination of access may occur at any time, with or without notice, and for any reason or for no reason, in AIT's discretion.

8.3 The rates for the LTL services arranged through the website will be displayed in the MyLTL carrier selection process.  Customer will have an opportunity to select a carrier based upon the information provided in that process.  Customer is responsible for properly describing shipments (including count, weight and, if applicable, National Motor Freight Classification class) in that process.  Customer acknowledges that all rates and limitations are subject to proper description and, in the event of misdescription by Customer, are subject to modification to the rates and limitations corresponding to the actual description of the shipments.

8.4 In the event of any loss or damage to any shipments handled by carriers selected through the web-based carrier selection process, Customer must notify AIT in writing immediately to enable AIT to timely file claims with the applicable carrier.  AIT will submit a claim directly to the selected carrier on Customer's behalf.  By selecting a carrier through the web-based carrier selection process, Customer acknowledges and agrees to the selected carrier's limitations of liability, rules tariff(s), claims and liability policies, conditions of contract, and all other related policies and rules for that shipment, which shall be established by the selected carrier's contract with AIT.  In many cases, the contract between AIT and the selected carrier may set forth limits of liability below those published on the carrier's public website and/or published rules tariff and/or terms and conditions of carriage.  Customer hereby acknowledges and agrees to limits of liability below the carrier published limits in exchange for the presented rates.  Upon written request, AIT will provide Customer with details about any reduced liability agreements in place with a potential or selected carrier.  Customer understands that it is incumbent upon it to request this information, and agrees that it cannot rely on published information to ascertain the limit of liability for any MyLTL shipment(s).