## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| MICHIGAN CUSTOM MACHINES, INC., <br><br> Plaintiff, <br><br> v. <br><br> AIT WORLDWIDE LOGISTICS, INC., and JP GRAHAM TRANSPORT, INC., <br><br> Defendants. | Case No. 2:20-cv-11644-LJM-RSW <br><br><br> Honorable Laurie J. Michelson <br><br> Magistrate R. Steven Whalen |

## DEFENDANT AIT WORLDWIDE LOGISTICS, INC.'S
## MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a),
## OR, IN THE ALTERNATIVE,  TO DISMISS THE COMPLAINT
## PURSUANT TO FED. R. CIV. P. 12(b)

NOW COMES Defendant AIT WORLDWIDE LOGISTICS, INC. ("AIT"),

by and through its attorneys, David J. Stein of Masuda, Funai, Eifert, & Mitchell,

Ltd., and Wendy Lindstrom, Laura D. Castner, and Hanoch Sheps of Mazzola

Lindstrom, LLP, and, pursuant to Local Rule 7.1 of the U.S. District Court for the

Eastern District of Michigan, Rule 12(b) of the Federal Rules of Civil Procedure,

and 28 U.S.C. §1404(a), submits its Motion to Transfer venue to the U.S. District

Court for the Northern District of Illinois Dismiss, or, in the alternative, dismiss

Plaintiff MICHIGAN CUSTOM MACHINES, INC.'S ("MCM") Complaint, and in

support states as follows:

1.     Under applicable law, the AIT Tariff which governed the dealings among the parties at issue in MCM's Complaint contains a valid and enforceable mandatory forum selection clause requiring that actions arising from or relating to the Tariff be brought in the state or federal courts of DuPage County or Cook County, Illinois, to the exclusion of any other venue;

2.     Public interest factors relevant to a *forum non conveniens* determination do not preclude transfer;

3.     Even if the forum selection clause is not valid and enforceable, private interest factors do not preclude transfer;

4.     If the Court does not transfer this action to the Northern District of Illinois pursuant to the forum selection clause, the action should be dismissed without prejudice.

5.     Pursuant to Local Rule 7.1, AIT has contacted counsel for Plaintiff to seek concurrence in this Motion.   Plaintiff plans to oppose this Motion and confirmed its intention to do so by email to counsel for AIT dated August 25, 2020.

6.     Pursuant to Local Rule 7.1, AIT has contacted counsel for Defendant JP Graham Transport, Inc., to seek concurrence in this Motion.  JP Graham consents to and supports this Motion, as confirmed by email to counsel for AIT dated August 21, 2020.

WHEREFORE, for all the reasons stated herein and in AIT's Brief in Support

of its Motion to Transfer Venue to the Northern District of Illinois, or, in the alternative, to Dismiss the Complaint, and the accompanying Declaration of Dan Sistler and accompanying exhibits, filed contemporaneously herewith, Defendant AIT Worldwide Logistics, Inc. respectfully requests that this Court enter an Order granting its Motion transferring this action to the Northern District of Illinois, or, in the alternative, dismissing the Complaint, and granting any other and further relief that the Court deems equitable and just in this matter.

Dated:  August 25, 2020                    Respectfully submitted,


                                           /s/ David J. Stein

                                           David J. Stein
                                           Masuda, Funai, Eifert & Mitchell, Ltd.
                                           203 North LaSalle Street Suite 2500
                                           Chicago, Illinois 60601
                                           P: (312) 245-7500
                                           dstein@masudafunai.com
                                           *Attorneys for Defendant AIT Worldwide Logistics, Inc.*

                                           Mazzola Lindstrom LLP
                                           Wendy Lindstrom *(admission pending)*
                                           Laura D. Castner *(admission pending)*
                                           Hanoch Sheps *(admission pending)*
                                           1350 Avenue of the Americas 2nd Floor
                                           New York, New York 10019

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| MICHIGAN CUSTOM MACHINES, INC., <br><br>     Plaintiff, <br><br> v. <br><br> AIT WORLDWIDE LOGISTICS, INC., and JP GRAHAM TRANSPORT, INC., <br><br>     Defendants. | Case No. 2:20-cv-11644-LJM-RSW <br><br><br> Honorable Laurie J. Michelson <br><br> Magistrate R. Steven Whalen |

## DEFENDANT AIT WORLDWIDE LOGISTICS, INC.'S BRIEF IN SUPPORT OF ITS MOTION TO TRANSFER VENUE OR, IN THE ALTERNATIVE, TO DISMISS THE COMPLAINT

## I.    ISSUES PRESENTED

A.    Whether MCM's claims arising from and relating to AIT's and JP Graham's transportation of a machine manufactured by MCM for non-party Standard Motor Products, Inc. ("Standard Motor" or the "Standard Motor machine") in May 2019 are governed by the forum selection clause in AIT's Tariff.

B.    Whether the forum selection clause in AIT's Tariff is valid and enforceable as to MCM's claims against AIT.

C.    Whether the forum selection clause in AIT's Tariff is valid and enforceable as to MCM's claims against JP Graham.

D.    Whether the public interest factors preclude transfer of this action to

the federal or state courts of DuPage, Illinois or Cook County, Illinois, pursuant to the forum selection clause.

E.      In the event that the forum selection clause in the AIT's Tariff is not valid and enforceable, whether the private interest factors preclude transfer;

F.      Whether this action should be transferred pursuant to 28 U.S.C. §1404(a).

G.      Whether MCM's Complaint should be dismissed for *forum non conveniens* pursuant to Rule 12(b) of the Federal Rules of Civil Procedure and 28 U.S.C. §1404(a).

TABLE OF CONTENTS

III.   INTRODUCTION ........................................................................1

IV.   STATEMENT OF FACTS AND PROCEDURAL HISTORY ...................2

A.   AIT's Business and Tariff ...................................................2

B.   AIT's Bill of Lading references Its Tariff. ...................................5

C.   AIT and MCM contracted to transport Standard Motor Machine pursuant to AIT's Tariff. ...................................................................6

D.   AIT engaged JP Graham to transport the Standard Motor machine under its Tariff and only learned of MCM's "Bill of Lading" after the machine was damaged in an accident. ...............................................8

E.   MCM's Complaint. ........................................................9

V.   ARGUMENT ...........................................................................10

A.   Standards of Review ......................................................10

1.   Standard for Evaluating a Forum Selection Clause Designating A Domestic Forum ..............................................................10

2.   Standard of Review for a Rule 12(b)(6) Motion to Dismiss .................13

B.   The Forum Selection Clause in AIT's Tariff Is Valid, Enforceable, and Requires Transfer to an Agreed Forum such as the Northern District of Illinois. ...................................................................14

1.   The Tariff requires any action "arising from or related" thereto to be brought in the federal or state courts of DuPage or Cook County. ...................15

2.   Public interest factors do not preclude transfer to the federal or state courts of DuPage or Cook County. ...................................................21

C.   Private interest factors also support the transfer of this action to the Northern District of Illinois. ..............................................................21

D.   Alternatively, MCM's Complaint Should Be Dismissed Pursuant to Rule 12(b) ..................................................................23

VI.   CONCLUSION .......................................................................24

## II.   CONTROLLING OR MOST APPROPRIATE AUTHORITY

<u>Cases</u>

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)................................................................14

*Atlantic Marine Constr. Co. v. U.S. District Court*,
   571 U.S. 49 (2013)........................................................ 11, 12, 14, 21-23

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................13

*Brooks v. Ross*,
   578 F.3d 574 (7th Cir. 2009) .......................................................14

*D&B II Enters., LLC v. Universal Tax Sys.*,
   No. 13 C 5702, 2018 U.S. Dist. LEXIS 55423 (N.D. Ill. Mar. 31, 2018)............17

*Holtzman v. Vill. Green Mgmt. Co.*, LLC,
   No. 19-cv-111502020, U.S. Dist. LEXIS 8235 (E.D. Mich., Jan. 17, 2020)
   ........................................................................................ 15, 20

*Ingenium Techs Corp. v. Beaver Aero. & Def., Inc.*,
   122 F.Supp.2d 683 (E.D. Mich. 2015) ...............................................16

*Int'l Star Registry of Ill. v. Omnipoint Mktg., LLC,*
   No. 05 C 6923, 2006 U.S. Dist. LEXIS 68420 (N.D. Ill. Sept. 6, 2006) ...... 13, 17

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
   858 F.2d 509 (9th Cir. 1988) ....................................................... 17, 19

*Marra v. Papandreou*, 216 F.3d 1119 (D.C. Cir. 2000)........................................17

*Nickesha McClain v. Oasis Legal Fin.,*
   No. 19-CV-426-CRS, 2020 U.S. Dist. LEXIS 17923 (W.D. Ky. Jan. 31, 2020)
   ........................................................................................23

*Price v. PBG Hourly Pension Plan*,
   921 F. Supp. 2d 764 (E.D. Mich. 2013) ...............................................2

*Quicken Loans v. RE/MAX, LLC*,
   216 F.Supp.3d 828 (E.D. Mich. 2016) ............................................. 11, 12, 13, 15

*Rucker v. Oasis Legal Fin.,*
   632 F.3d 1231 (11th Cir. 2011) ............................................................17

*The Bremen v. Zapata Off-Shore Co.,*
   407 U.S. 1 (1972) .................................................................................17

*Wilson v. 5 Choices, LLC*,
   776 Fed.Appx. 320 (6th Cir. 2019)............................................... 19, 23

## **Statutes**

28 U.S.C. §1391(b) ....................................................................................9

28 U.S.C. §1404(a) .............................................................i, v, 2, 10-11, 14

49 U.S.C. §14706 ......................................................................................9

49 U.S.C. §14706(d)(1).............................................................................10

## **Rules**

Local Rule 7.1 of the U.S. District Court for the Eastern District of Michigan.....i-ii

Fed. R. Civ. P. 12(b)(6).......................................................i, v, 13-14, 23

### III.   <u>INTRODUCTION</u>

This action arises from a contract of carriage between MCM and AIT to transport a machine manufactured by MCM in Michigan to its customer, Standard Motor, in South Carolina.  AIT contracted with JP Graham Transport to transport the machine, which was damaged in an accident en route to the destination. MCM asserts claims against AIT and JP Graham for violation of the Carmack Amendment, and against AIT as a broker for breach of contract and negligence, and seeks to recover the cost of repairs to the machine (which, in fact, have already been at least partially reimbursed).

AIT operates pursuant to a Tariff which is incorporated in all of its contracts unless otherwise provided or modified and which was explicitly referenced and incorporated in the communications relating to AIT's agreement to arrange transport for MCM's machine, as well as in prior dealings between AIT and MCM.  In a transparent effort to avoid the Tariff's limitations of liability provision and a forum selection clause requiring any action to be brought in the state or federal courts of DuPage County or Cook County, Illinois, MCM alleges an oral contract and completely omits from its Complaint any mention of its written dealings with MCM.

MCM's evasion tactics are unavailing.  The forum selection clause is valid and enforceable, and, under established Supreme Court precedent, may only be disregarded in "extraordinary circumstances," which do not exist here.  The clause

1

is also enforceable as to JP Graham, which supports AIT's application to transfer. As a result, this action must be transferred to the U.S. District Court for the Northern District of Illinois, or, alternatively, dismissed so that MCM can file in an appropriate venue.

## IV.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. AIT's Business and Tariff

AIT is licensed and operates as a freight forwarder and indirect air carrier.  At times, AIT acts as a broker, contracting to transport goods for a customer and then contracting with a carrier to perform the transportation/shipment services. (Declaration of Dan Sistler, "Sistler Dec.", ¶ 2.)[1]  Unless otherwise specifically agreed with a customer in advance, in writing, AIT's forwarding and carrier services within the United States are governed by its U.S. Domestic Terms and Conditions of Contract of Carriage (its "Tariff" or "Terms and Conditions"), as published in or about October 2015.  *Id.,* ¶ 3.   AIT's Tariff is available on its website at www.aitworldwide.com/terms-and-conditions, and AIT's business forms and email footer (automatically included in emails sent by AIT personnel) inform recipients that the "Global services provided by AIT Worldwide Logistics are subject to the

---

[1] A court may examine declarations and other evidence extrinsic to the Complaint when evaluating a motion to transfer venue. *See Price v. PBG Hourly Pension Plan*, 921 F. Supp. 2d 764, 772 (E.D. Mich. 2013) (noting that a court is not limited to the pleadings on a motion to transfer pursuant to 28 U.S.C. § 1404(a) and considering extrinsic evidence).

2

applicable terms and conditions published at http://www.aitworldwide.com/terms-and-conditions."  *Id.,* ¶ 4, Ex. A.

The Tariff contains the basic contract terms of all transactions between AIT and its customers and expressly confirms the customer/shipper's agreement to, and understanding of, the binding nature of those terms:

- "Customer agrees to be bound by these U.S. Domestic Terms and Conditions of Contract of Carriage ('Terms and Conditions'); and indicates its understanding that the AIT waybill, bill of lading or other shipping document utilized is non-negotiable . . . No agent or employee of the parties may alter these Terms and Conditions, unless in writing and signed by both parties."

- "These terms and Conditions constitute the contract of carriage between AIT and Customer; and these Terms and Conditions shall supersede and prevail over any conflicting terms and conditions contained on any bill of lading, waybill, shipping document, shipping receipt, or other purported contract of transportation (unless executed by AIT and Customer and, by its terms, supersedes these Terms and Conditions) under which any shipper, carrier, person or entity undertakes to tender freight to AIT for transportation.  The signature of AIT's driver or the driver of any of its agents on any such document shall be solely for the convenience of the party tendering such shipment and shall not constitute an acceptance by AIT or AIT's agent of any terms which vary from these Terms and Conditions."

- "Customer warrants and represents to AIT that the information set forth on the face of the AIT waybill, bill of lading(s) or other shipping document or the information supplied to AIT electronically regarding any shipment(s) is complete and accurate . . . . Customer's violation of any of these warranties will excuse AIT from any liability whatsoever for loss of or damage to any item(s) incurred as a result of such violation and shall also cause Customer to be liable to AIT for all claims, fines, penalties, damages, costs or other sums, including reasonable attorneys' fees, incurred by AIT as a result of

3

such violation."

(Sistler Dec., Ex. A, § 1.)

In addition, the Tariff states the parties' understanding of the value of the materials to be shipped, and liability in the event of loss of or damage to the shipped materials. *Id.,* Ex. A, § 2. The Tariff states both an assumed value of the shipped items, and the customer's ability to declare a higher value with a corresponding adjustment of liability in the event of loss. *Id.* Further, the Tariff provides that,

> articles and or shipments with a declared value in excess of $25,000 will not be accepted for transportation unless Customer makes advance arrangements therefor with AIT by notifying the local AIT office handling the shipment on behalf of Customer . . . Moreover, in no event shall AIT's liability for aggregate losses at any one time at any one place exceed $100,000 unless mutually agreed upon in writing by both parties prior to tender of the shipment(s).

*Id.*, Ex. A, § 2.2. The Tariff makes clear that except as stated therein, AIT's rates do not include insurance or other compensation for damages or loss. While, at a customer's request, AIT may assist with the placement of cargo insurance, unless the customer so requests before shipment and AIT confirms the request in writing, AIT is not obligated to procure insurance on the customer's behalf. *Id*., Ex. A, § 2.6. The Tariff also defines liabilities that AIT does not assume. *Id.*, Ex. A, § 3.

The Tariff also contains specific terms applicable to disputes among the parties, including that:

- AIT's "Terms and Conditions shall be construed according to the applicable federal laws of the United States and laws of the State of Illinois,

4

without giving effect to that State's conflict of laws principles;"

- The "Terms and Conditions shall apply to all claims, regardless of whether such claims are founded in tort, contract, or otherwise;"

- "Any action arising from or related to these Terms and Conditions shall be prosecuted in the state or federal courts of DuPage or Cook County, State of Illinois, USA, to the exclusion of any other venue, and the parties hereby consent to the exclusive jurisdiction of said courts;"

- "The obligations in this paragraph shall survive termination of these Terms and Conditions."

*Id.*, Ex. A, § 5.9.

## B. AIT's Bill of Lading references Its Tariff.

In addition to AIT's email language referring recipients to the Tariff on its website, AIT's standard bill of lading likewise references and incorporates the provisions of the Tariff. (Sistler Dec. ¶ 5, Ex. B.)  AIT's bill of lading allows a shipper-customer to declare the value of the material being shipped and recites that, "[u]nless a higher value is declared and applicable charges paid, the liability of AIT shall be limited per the U.S. Domestic Terms and Conditions of Carriage published at www.aitworldwide.com/terms-and-conditions and where applicable on the reverse side of the bill." *Id.*, Ex. B. The bill of lading further notes, next to the consignee signature block, that "All shipments are subject to the terms and conditions of www.aitworldwide.com/terms-and-conditions and, where applicable, on the reverse side of this bill, unless otherwise agreed upon in writing." *Id.*

5

### C. AIT and MCM contracted to transport Standard Motor Machine pursuant to AIT's Tariff.

On March 12, 2019, MCM's Materials Coordinator, Jason Stump, emailed Scott Ranspach of AIT requesting a quote for shipment of a direct load from MCM to Standard Motor in Greenville, South Carolina.  Stump indicated the dimensions and weight for the item to be shipped, requirements for the truck, and a pickup date of March 15 from MCM.  (Sistler Dec., Ex. C.)  That same day, AIT responded with a price, to which MCM agreed, and the parties communicated several times over the next few days regarding shipping arrangements.  *Id.*  AIT's email response included the statement that "Global services provided by AIT Worldwide Logistics are subject to the applicable terms and conditions published at www.aitworldwide.com/terms-and-conditions," to which MCM made no objection or response.  *Id.*  Several days later, MCM advised that it needed to reschedule the shipment.  *Id.*

On or about May 21, 2019, Mr. Stump emailed Mr. Ranspach advising that "This load is back on our schedule and ready to ship this Thursday 5/23."  *Id.*, Ex. C.  Mr. Ranspach immediately confirmed that AIT would make arrangements for the shipment.  Later that morning he emailed Mr. Stump confirming that the shipment was set up for Thursday, May 23, and attached AIT's bill of lading bearing shipment date May 23, 2019, and reflecting the parameters of the load to be shipped from MCM to Standard Motor, as stated by MCM on March 12, 2019.  AIT's bill of

6

lading included a box for MCM to declare the value of the item(s) being shipped if it chose to do so and noted the applicability of AIT's Tariff as found on its website. *Id.,* Ex. D.  Apart from the pickup/loading details and date, the terms of AIT's agreement to transport the Standard Motor machine for MCM were unchanged.  *Id., ¶¶* 7-9.

From May 21 through May 23, 2019, Mr. Ranspach and Mr. Stump continued to email regarding arrangements for the pickup and loading of MCM's materials on the truck arranged by AIT.  *Id.*, Exs. C-D.  At no time did MCM object to or request any modification of AIT's bill of lading, or Tariff.  *Id.*  Between March and May 23, 2019, neither Mr. Stump nor anyone else from MCM informed Mr. Ranspach or anyone else at AIT of the value of the machine being transported to Standard Motor, or request that AIT arrange for insurance for same.  *Id.*

Notably, this was not the first time that MCM contracted AIT to transport goods pursuant to AIT's Tariff and bill of lading.  MCM did so in at least March 2018 and January 2019 using the same form attached to Mr. Ranspach's May 22, 2019 email.  *Id.*, Ex. E.  In October 2018, MCM had goods shipped to it by General Motors via AIT, under the same form of AIT bill of lading, which Mr. Stump signed for MCM as consignee, acknowledging receipt.  *Id.*

### D. AIT engaged JP Graham to transport the Standard Motor machine under its Tariff and only learned of MCM's "Bill of Lading" after the machine was damaged in an accident.

When AIT acts as a broker for transportation services for its shipper-customers, it enters into a standard Broker/Carrier Transportation Agreement ("Broker Agreement") with motor carriers providing transportation of general commodities in interstate commerce. *Id.,* ¶ 11. In May 2015, AIT and Defendant JP Graham Transport, Inc. ("JP Graham") executed AIT's standard Broker Agreement, for an initial term of one year, and automatic one-year extensions. *Id.,* Ex. F, ¶ 1. Under the Broker Agreement, JP Graham must maintain cargo insurance for damage to materials it is contracted to transport, and to have AIT named on the certificate of insurance.

After MCM contacted AIT in March 2019 about shipping the Standard Motor machine, AIT reached out to JP Graham about transporting this load, and JP Graham agreed to do so. *Id., ¶* 12-14. When MCM informed AIT of the rescheduled May 23 ship date, AIT again contacted JP Graham, which agreed to transport the load to Standard Motor. *Id.*

On May 23, 2019, JP Graham's driver arrived at MCM's facility in Novi, Michigan and the Standard Motor machine, already packaged, was loaded on the truck for transport. *Id.,* ¶ 14. However, on May 24, 2019, the truck was involved in an accident in South Carolina, and the machine was damaged. *Id.*

8

It was only after the accident that AIT learned of and received from the JP Graham driver a copy of an MCM "Bill of Lading" pertaining to the shipment. *Id.,* ¶ 15. MCM never provided this document to AIT in their communications regarding the terms and arrangements for shipment of the Standard Motor machine, but presented it to the JP Graham driver for signature on May 23. *Id.* Notably, MCM's "Bill of Lading" does not incorporate the AIT Tariff as reflected in AIT's Bill of Lading and email correspondence, which formed the basis for AIT's agreement to transport the Standard Motor machine. *Id.* Nor does MCM's "Bill of Lading" reflect the value of the Standard Motor machine, or any request for additional insurance. *Id.*

After MCM repaired the Standard Motor machine, it arranged with AIT to transport the machine to South Carolina. *Id.,* ¶ 16. This time, MCM requested insurance for the machine. Again, MCM did not object to AIT's bill of lading. *Id.,* Ex. G.

### E. MCM's Complaint.

MCM filed its Complaint against AIT and JP Graham in June 2020 in the Eastern District of Michigan. Asserting federal jurisdiction under the Carmack Amendment, 49 U.S.C. § 14706, MCM alleged that venue is proper in this jurisdiction under 28 U.S.C. § 1391(b), "because Defendants transacted business in the State of Michigan and this District and are subject to personal jurisdiction in this

District;" and "pursuant to 49 U.S.C. § 14706(d)(1) because Defendants operate in Michigan."  Compl. ¶¶ 6, 9.

MCM asserts claims against AIT and JP Graham for liability under the Carmack Amendment (Compl. ¶¶2 9-36); and against AIT "as broker" for breach of contract (Compl. ¶¶ 37-45) and negligence (Compl. ¶¶46-51).  Each of MCM's claims is premised on a purported "oral contract" "pursuant to which AIT agreed to transport and/or arrange the transportation of the Machine by motor carriage for certain consideration from MCM's facility in Novi, Michigan, to Standard Motor's facility in Greenville, South Carolina."  Compl. ¶ 12.  MCM references and attaches its May 2019 "Bill of Lading" to the Complaint, but fails to mention the communications between Mr. Ranspach and Mr. Stump regarding the terms on which AIT agreed to arrange for transport of the Standard Motor machine, or the AIT bill of lading that Mr. Ranspach provided, and does not allege all the material terms of the purported oral contract.  *Id.*, ¶¶ 12, 37-45.

## V.   <u>ARGUMENT</u>

### A. Standards of Review

#### 1.  Standard for Evaluating a Forum Selection Clause Designating A Domestic Forum

Under 28 U.S.C. § 1404(a), a district court may transfer any civil case, "[f]or the convenience of parties and witnesses, in the interest of justice, . . . to any other district or division where it might have been brought or to any district or division to

which all parties have consented." "[G]enerally, when ruling on a motion to transfer

venue under section 1404(a), a district court should consider the private interests of

the parties, including their convenience and the convenience of potential witnesses,

as well as other public-interest concerns, such as systemic integrity and fairness,

which come under the rubric of interests of justice." *Quicken Loans v. RE/MAX,*

*LLC*, 216 F.Supp.3d 828, 831 (E.D. Mich. 2016) (citations and internal punctuation

omitted).

However, the presence of a valid forum selection clause alters this approach.

*Id.* at 832. "Federal law, specifically 28 U.S.C. § 1404(a), governs the District

Court's decision whether to give effect to the parties' forum selection clause."

*Atlantic Marine Constr. Co. v. U.S. District Court*, 571 U.S. 49, 58 (2013) (quoting

*Stewart v. Ricoh Corp.*, 487 U.S. 22, 32 (1988)). The *Atlantic Marine* Court noted,

> "[s]ection 1404(a) is merely a codification of the doctrine of
> *forum non conveniens* for the subset of cases in which the
> transferee forum is within the federal court system; in such cases,
> Congress has replaced the traditional remedy of outright
> dismissal with transfer." 134 S. Ct. at 580. The Court further
> explained that "[t]he calculus [of the *forum non conveniens*
> analysis] changes . . . when the parties' contract contains a valid
> forum-selection clause, which represents the parties' agreement
> as to the most proper forum." *Id.* at 581 (quotation marks
> omitted). "The 'enforcement of valid forum-selection clauses,
> bargained for by the parties, protects their legitimate
> expectations and furthers vital interests of the justice system.'"
> *Ibid.* (quoting *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 33,
> 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988)). The Court held,
> therefore, that "'a valid forum-selection clause [should be] given
> controlling weight in all but the most exceptional cases.'" *Ibid.*

11

(quoting *Stewart,* 487 U.S. at 33).

*Quicken Loans,* 216 F. Supp. 3d at 832 (quoting and discussing *Atlantic Marine*, 571 U.S. 49).

The *Atlantic Marine* Court prescribed a modified *forum non conveniens* analysis where a valid forum selection clause exists, focusing solely on the public interest factors, which "will rarely defeat a transfer motion." *Atlantic Marine*, 571 U.S. at 52. "First, the forum selection clause preempts the plaintiff's venue privilege, so that "the plaintiff's choice of forum merits no weight." *Id.* at 63. "Second, because the parties made their choice of forum in their contract in advance of the dispute, the private interest factors are irrelevant to the analysis, because they 'must [be] deem[ed] . . . to weigh entirely in favor of the preselected forum.'" *Id.* at 64. Third, when a party files suit in a forum not prescribed by the forum selection clause, the transferor district's choice-of-law rules will not apply as they otherwise might, which is "in some circumstances may affect the public interest considerations." *Id.* The practical result is that forum selection clauses should control except in unusual cases. *Id.* The party defying a forum selection clause has the burden of showing that transfer to the bargained-for forum is unwarranted. *Id.* at 52.

Federal courts construing forum selection clauses apply federal common law, which directs that forum selection clauses are to be interpreted by reference to

ordinary contract principles. *Quicken Loans,* 216 F. Supp. 3d at 833. The court may consider facts outside of the complaint in determining whether venue is proper. *Int'l Star Registry of Ill. v. Omnipoint Mktg, LLC*, No. 05 C 6923, 2006 U.S. Dist. LEXIS 68420, *7 (N.D. Ill. Sept. 6, 2006) (citing *Continental Cas. Co. v. American Nat'l Ins. Co.*, 417 F. 3d 727, 733 (7th Cir. 2005)). Here, AIT's Tariff, communicated to MCM through the parties' email communications and AIT's bill of lading, as well as their past course of dealing, supplies a valid and enforceable forum selection clause applicable to MCM's claims, placing jurisdiction over "[a]ny action arising from or related to these Terms and Conditions . . . in the state or federal courts of DuPage or Cook County, State of Illinois, USA, to the exclusion of any other venue." Enforcement of this clause by transfer of this action to the Northern District of Illinois is required.

### 2.  Standard of Review for a Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss challenges the legal sufficiency of a complaint. While a court takes as true all well-pled factual allegations, the Supreme Court's Ruling in *Twombly* made clear that only a pleading containing sufficient factual support to demonstrate that it is "plausible on its face" can withstand a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard requires the plaintiff to provide "more than labels and conclusions because a formulaic recitation of the elements of a cause of action will not do." *Id.* at 570.

Absent such factual support, a complaint does not "raise a right of relief beyond the speculative level" and should be dismissed. *Id.* at 555.

A court is not bound to accept as true a legal conclusion couched as a factual assertion, *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009), and "should not accept as adequate abstract recitations of the elements of a cause of action." *Brooks v. Ross*, 578 F.3d 574, 481 (7th Cir. 2009). Here, MCM's claims fail to state a plausible cause of action pursuant to Rule 12(b)(6) because they are governed by the forum selection clause placing venue in "the state or federal courts of DuPage or Cook County, State of Illinois, USA, to the exclusion of any other venue." If the case is not transferred to the Northern District of Illinois, this Court should dismiss MCM's Complaint.

### B. The Forum Selection Clause in AIT's Tariff Is Valid, Enforceable, and Requires Transfer to an Agreed Forum such as the Northern District of Illinois.

"[F]ederal law, specifically 28 U.S.C. §1404(a), governs the District Court's decision whether to give effect to the parties' forum-selection clause." *Atlantic Marine,* 571 U.S. at 58 (citing *Stewart v. Ricoh Corp.*, 487 U.S. 22, 32 (1988)). There is a strong presumption in favor of enforcing forum selection clauses; where parties have agreed to a valid and enforceable forum selection clause, their agreed choice of forum should be honored "unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Id.* at 66, n. 8. No such

extraordinary circumstances clearly disfavor a transfer in this case.  Accordingly, the case should be transferred to Northern District of Illinois, or dismissed so that MCM can refile its claims.

### 1. The Tariff requires any action "arising from or related" thereto to be brought in the federal or state courts of DuPage or Cook County.

A federal court construing a forum selection clause applies federal common law, not the law of the state in which the federal court sits. *Quicken Loans,* 216 F.Supp.3d at 833.  "Federal common law in turn directs that forum-selection clauses should be interpreted 'by reference to ordinary contract principles.'  . . .  This requires courts to examine the contract's plain language to discern the parties' intentions.  . . . If the language is clear, no further contract interpretation is needed . . ." *Holtzman v. Vill. Green Mgmt. Co*., LLC, No. 19-cv-111502020, U.S. Dist. LEXIS 8235, at *17 (E.D. Mich., Jan. 17, 2020 (citations omitted).

"[T]he term "shall," as opposed to discretionary terms like 'may' or 'should,' when used in forum selection clauses make the requirement of a certain forum mandatory." *Transp. Sys., LLC v. Amazon,* No. 18-cv-11286, 2018 U.S. Dist. LEXIS 178055, at *6 (E.D. Mich., Oct. 17, 2018); *Quicken Loans*, 216 F.Supp.3d at 833. A forum selection clause that channels disputes to the courts "in" a state allows the parties to choose both/either state or federal courts; a clause that refers to the courts "of" a state limits jurisdiction to state courts.  *Quicken Loans,* 216 F.Supp.3d  at 834;

*Ingenium Techs Corp. v. Beaver Aero. & Def., Inc.*, 122 F. Supp. 2d 683, 687 (E.D. Mich. 2015).

The forum selection clause in AIT's Tariff provides that, "Any action arising from or related to these Terms and Conditions shall be prosecuted in the state or federal courts of DuPage or Cook County, State of Illinois, USA, to the exclusion of any other venue, and the parties hereby consent to the exclusive jurisdiction of said courts." (Sistler Dec., Ex. A, § 5.9.)  It is thus a mandatory clause which permits the parties to file suit in either state or federal court in DuPage County or Cook County, Illinois.[2]  MCM did not object to application of the Tariff as disclosed in AIT's emails and bill of lading, or ask for modification of its terms.  MCM's claims in the Complaint clearly "arise from" or are at least "related to" AIT's Tariff. Its claims for alleged violation of the Carmack Amendment and breach of contract seek to evade the limitations on liability stated in the Tariff. *Id.*  MCM's claim for negligence likewise seeks to hold AIT liable in excess the limitations of liability stated in the Tariff.  *Id.*

As discussed below, the forum selection clause is valid and enforceable.

### a.       The forum selection clause in AIT's Tariff is valid.

The first inquiry is whether the parties are bound by the forum selection clause

---

[2] The U.S. District for the Northern District of Illinois (at Chicago) encompasses both DuPage and Cook Counties.

in the Tariff.  "A forum selection clause is viewed as a separate contract that is severable from the agreement in which it is contained."  *Rucker v. Oasis Legal Fin.,* 632 F.3d 1231, 1237-1238 (11th Cir. 2011) (collecting cases); *Marra v. Papandreou*, 216 F. 3d 1119, 1123 (D.C. Cir. 2000).  When a court determines that a forum-selection clause is enforceable, it is focusing on the clause itself, rather than reaching the merits of the parties' substantive claims.  *Marra,* 216 F. 3d at 1123.  A forum selection clause is prima facie valid unless an opposing party can show "that enforcement would be unreasonable and unjust, or that the clause was invalid for reasons such as fraud or overreaching."  *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15 (1972), overruled in part on other grounds, *Stewart v. Ricoh, supra; Manetti-Farrow v. Gucci America, Inc.*, 858 F.2d 509, 514-515 (9th Cir. 1988).

MCM's Complaint alleges the parties had an oral contract.  Assuming for purposes of this motion that the contract of carriage was partially oral, it was at least partially reflected in the email exchanges between AIT and MCM, which expressly incorporated AIT Tariff's terms by reference in the footer to Mr. Ranspach's email, and in the AIT bill of lading sent to MCM.  The Tariff and its forum selection clause were incorporated into the contract between AIT and MCM for transport of the Standard Motor machine.  *See D&B II Enters., LLC v. Universal Tax Sys.,* No. 13 C 5702, 2018 U.S. Dist. LEXIS 55423, at *18-24 (N.D. Ill. Mar. 31, 2018); *Int'l Star Registry of Ill. v. Omnipoint Mktg., LLC,* 2006 U.S. Dist. LEXIS 68420, at *10-11.

17

### b.   The forum selection clause in AIT's Tariff is enforceable as to both MCM and JP Graham.

### i.  MCM

The Sixth Circuit has established a three-part test to determine if a forum selection clause is enforceable.  The clause is presumed to be enforceable, and the party opposing its application has the burden of showing it should not be enforced. *Transp. Sys., LLC v. Amazon*, 2018 U.S. Dist. LEXIS 178044, at *7.  The court considers: "(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Id.* (quoting *Wong v. Partygaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009)).  To satisfy the third factor, "the plaintiff must show that enforcement of the clause would be so inconvenient such that its enforcement would be unjust or unreasonable.  This is a heavy burden that is not met by showing mere inconvenience." *Id*. at *8 (quoting *Wong*, 589 F.3d at 829).

Both AIT and MCM are sophisticated parties with many years of experience shipping and arranging for shipping of cargo, and they have done business together for years.  (Sistler Dec., ¶ 10.)  After the May 2019 accident involving the Standard Motor machine, MCM contacted AIT to have the repaired machine transported to Standard Motor in South Carolina, and AIT did so.  *Id.*, ¶ 16.  If fraud, duress or

18

unconscionability were involved, MCM certainly would have learned of it before 2019, and would not have asked AIT to transport the repaired machine.

There is likewise no indication that the state or federal courts located in DuPage and/or Cook Counties in Illinois would "ineffectively or unfairly handle the suit." In fact, any of these courts would likely have greater experience with and knowledge of Illinois law, which under AIT's tariff is the law applicable to this dispute, along with the federal laws of the United States. *Id.*, Ex. A, § 5.9.

Nor can MCM show that enforcing the forum selection clause would be so inconvenient as to be unjust or unreasonable. While MCM might prefer litigating in Michigan for its own convenience, that is not enough, especially where the parties expressly agreed to bring any disputes before courts in Illinois. The forum selection clause is enforceable as to MCM.

### ii. JP Graham

> The Sixth Circuit has held that a non-signatory to a contract may be bound by a forum-selection clause in [it] "if the non-signatory is so sufficiently 'closely related' to the dispute that it is foreseeable that the party will be bound." [Citations.] . . . [T]he Sixth Circuit has also expressed that "a range of transaction participants, parties and non-parties should benefit from and be subject to forum selection clauses" where "the alleged conduct of the non-parties is so closely related to the contractual relationship that the forum selection clause applies to all defendants." *Wilson v. 5 Choices, LLC*, 776 Fed.App. 320, 329 (6th Cir. 2019) (unpublished) (quoting *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988) (additional citation omitted)). This inquiry demands the Court assess the totality of the circumstances to determine whether, "in light of

> [the] circumstances, it is fair and reasonable to bind a non-party
> to the forum selection clause." ...

*Holtzman,* 2020 U.S. Dist. LEXIS 8235, at *19-20 (citations omitted).

The Eleventh Circuit has held a non-signatory to a written agreement can invoke a forum-selection clause therein against a signatory based on equitable estoppel: (1) when the signatory "must rely on the terms of the written agreement in asserting [its] claims against the nonsignatory;" and (2) when the signatory "raises allegations of . . . substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *Id.* Other courts have held that because the Sixth Circuit lets district courts enforce forum-selection clauses against non-signatories if the non-signatories are "closely related" to the dispute and it was "foreseeable" they might be bound, non-signatories should also be able to invoke forum-selection clauses against signatories. *Id.* at *20-22 (citations omitted).

Although JP Graham was not a party to the contract between AIT and MCM for transportation of the Standard Motor machine to South Carolina, its contract was with AIT for services under their Broker Agreement. Further, JP Graham was integrally involved in the transportation of the Standard Motor machine and directly involved in the accident which damaged the machine. Apart from the fact that JP Graham supports the application of AIT's Tariff and the transfer of this case pursuant to the forum selection clause, it is properly bound by and may invoke the forum

20

selection clause against MCM.

### 2. Public interest factors do not preclude transfer to the federal or state courts of DuPage or Cook County.

"Public-interest factors relevant to a *forum non conveniens* analysis may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.' . . . " *Atlantic Marine,* at n. 5 (citations omitted).  Here, none of these factors outweigh the parties' agreed, enforceable forum selection clause.  MCM pleaded its complaint as a federal question case, not a diversity case; and the applicable law under AIT's Tariff is Illinois law, without regard to choice-of-law rules, and federal law. Although MCM is based in Michigan, there is no overwhelming local interest in having this case decided by a Michigan court.  And due to COVID-19 there will likely be unavoidable delays in state and federal courts in both Michigan and Illinois. Accordingly, none of the public *forum non conveniens* factors preclude transfer in accordance with the forum selection clause in AIT's Tariff.

### C. Private interest factors also support the transfer of this action to the Northern District of Illinois.

Even assuming *arguendo* that the forum selection clause is not valid and enforceable, the private interest factors involved in a *forum non conveniens* analysis likewise support transfer.  Factors "relating to the parties' private interests include

21

'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Atlantic Marine,* 571 U.S. at  62, n. 5.

These factors are neutral at best.  MCM may have repair records in Michigan for the Standard Motor machine that was damaged, but the machine itself is now in South Carolina.  MCM's repair records can presumably be exchanged and examined electronically, particularly given COVID and potential travel issues and/or quarantines.  AIT's headquarters, where its records are mainly kept, are in Chicago; and JP Graham's headquarters are in Pennsylvania.  Their records can likewise presumably be made available electronically.  Since MCM is the plaintiff, it should be able to secure the attendance of its own witnesses, including regarding its construction of the Standard Motor machine and any damage, repairs and associated costs, regardless of where this case is venued.  It does not appear at this time that a premises view of MCM's Novi plant, or view of damage to the machine, or the accident site (in South Carolina) are necessary.  Nor does it appear that any insurmountable or excessive practical problems would result from transfer.  Under all the circumstances, the private interest factors do not support denial of transfer.

### D. Alternatively, MCM's Complaint Should Be Dismissed Pursuant to Rule 12(b)

The Sixth Circuit recognizes that a party seeking to enforce a forum selection clause may do so via a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See, e.g., Transp. Sys., LLC v. Amazon*, 2018 U.S. Dist. LEXIS 178055 at *3 (granting motion to enforce forum selection clause; noting that while *Atlantic Marine* found such a motion under the *forum non conveniens* doctrine to be improper under Rule 12(b)(3), it did not reach the question of whether such a motion could be brought under Rule 12(b)(6)). "On a motion pursuant to Rule 12(b)(6), the court only needs to determine whether the forum clause is enforceable and applicable; if it is, then the suit should be dismissed." *Transp. Sys. v. Amazon*, 2018 U.S. Dist. LEXIS 178044, at *5 (citation omitted); *see also Wilson v. 5 Choices, LLC*, 776 Fed. Appx. 320, 326 (6th Cir. 2019); *Nickesha McClain v. Oasis Legal Fin.,* No. 3:19-CV-426-CRS, 2020 U.S.Dist. LEXIS 17923, at *4 (W.D. Ky. Jan. 31, 2020).

As discussed *supra,* the forum selection clause in AIT's Tariff is valid and enforceable as among the parties to this action, and provides for venue in a state or federal court in DuPage or Cook County, Illinois. To the extent that the Court does not wish to transfer this action to the Northern District of Illinois, AIT respectfully asks that Court dismiss this action so that MCM may refile in a forum compliant with the forum selection clause.

23

## VI.   <u>CONCLUSION</u>

For all of the foregoing reasons, AIT respectfully submits that its motion must be granted, and that this matter must be transferred to the U.S. District Court for the Northern District of Illinois, or dismissed without prejudice.

/s/ David J. Stein

David J. Stein (P# P84108)
Masuda, Funai, Eifert & Mitchell, Ltd.
39555 Orchard Hills Place, St. 600
Novi, Michigan 48375
P:  (248) 564-1116
dstein@masudafunai.com
***Attorneys for Defendant AIT Worldwide Logistics, Inc.***

Mazzola Lindstrom LLP
Wendy Lindstrom *(admission pending)*
Laura D. Castner *(admission pending)*
Hanoch Sheps *(admission pending)*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that Defendant AIT Worldwide Logistics, Inc.'s Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), or, in the alternative, to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b), and the brief in support thereof, was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicates on the electronic filing receipt.  All other parties will be served by regular U.S. Mail, if necessary.  Parties may access this filing through the Court's electronic filing system.

Dated:  August 25, 2020

/s/ David J. Stein

David J. Stein (P# P84108)
Masuda, Funai, Eifert & Mitchell, Ltd.
39555 Orchard Hills Place, St. 600
Novi, Michigan 48375
P:  (248) 564-1116
dstein@masudafunai.com

Mazzola Lindstrom LLP
Wendy Lindstrom *(admission pending)*
Laura D. Castner *(admission pending)*
Hanoch Sheps *(admission pending)*