# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| MICHIGAN CUSTOM MACHINES, INC., <br><br> Plaintiff, <br><br> v. <br><br> AIT WORLDWIDE LOGISTICS, INC., and JP GRAHAM TRANSPORT, INC., <br><br> Defendants. | Case No. 2:20-cv-11644-LJM-RSW <br><br><br> Honorable Laurie J. Michelson <br><br> Magistrate R. Steven Whalen |

**DEFENDANT AIT WORLDWIDE LOGISTICS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT OR IN THE ALTERNATIVE TO TRANSFER VENUE**

David J. Stein (P# P84108)
Masuda, Funai, Eifert & Mitchell, Ltd.
39555 Orchard Hills Place, St. 600
Novi, Michigan 48375
dstein@masudafunai.com
***Attorneys for Defendant AIT Worldwide Logistics, Inc.***

Mazzola Lindstrom LLP
Wendy Lindstrom *(admission pending)*
Laura D. Castner *(admission pending)*
Hanoch Sheps *(admission pending)*

i

TABLE OF CONTENTS

I.   INTRODUCTION ...............................................................................................1

II.  ARGUMENT ....................................................................................................1

   A.  The Carmack Amendment and its special venue rules do not apply to the

   transaction between AIT and MCM. ......................................................................1

      1.   AIT was not a carrier in the transportation of the Machine. .........................1

      2.   The Carmack Amendment does not apply to a broker like AIT. ..................3

   B.  Even if the Carmack Amendment applies, that does not prevent application

   of the forum selection clause in AIT's Tariff. .......................................................5

   C.  MCM fails to show that Section 1404 factors preclude transfer. .....................6

# I.    INTRODUCTION

The Carmack Amendment does not apply to MCM's claims against AIT, which acted not as a "carrier" "transporting" the Standard Motor machine to South Carolina, but at most as a broker.  Even if AIT was a "carrier," that does not eliminate the forum selection clause in its published Tariff, specifically identified in its March and May 2019 bills of lading to which MCM did not object.  The Tariff becomes part of all of AIT's contracts; and MCM's attempt to dodge it through willful blindness and handing a different bill of lading to JP Graham on the date of transport, without notice to AIT, cannot stand.  Further, MCM's reliance on a "convenience" test to force its choice of forum contrary to the Tariff is misplaced; and other *forum non conveniens* factors it cites are at best neutral.  AIT's motion should be granted.

# II.    ARGUMENT

## A. The Carmack Amendment and its special venue rules do not apply to the transaction between AIT and MCM.

### 1.  AIT was not a carrier in the transportation of the Machine.

The Carmack Amendment applies to transactions between shippers and "carriers." 49 U.S.C. §14706(a)(1).  But as confirmed by MCM's Complaint and the evidence before the Court, AIT does not fall within the statutory definition of a "carrier," and did not "transport" goods within the meaning of the statute, so the Carmack Amendment and its special venue rules, 49 U.S.C. §14706(d), do not apply.

To state a Carmack Amendment claim, MCM must sufficiently allege that

1

AIT is a carrier, and that as such, it provided transportation or services to a shipper. *Codan Forsikring A/S v. ConGlobal Indus.*, 315 F. Supp. 3d 1085, 1090 (N.D. Ill. 2018). "Even though a company might act as a carrier in the ordinary course of its business, to be liable under the Carmack Amendment, requires that it did so 'in the transaction at issue.'" *Id.* at 1091. A "carrier" is "a motor carrier, a water carrier, and a freight forwarder;" a "motor carrier" "provid[es] motor vehicle transportation for compensation." 49 U.S.C. §13102(3), (14).[1] "Transportation" includes,

> (A) a motor vehicle . . . or equipment of any kind related to the movement of . . . property . . . and
> (B) services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, . . . storage, handling, packing, unpacking, and interchange of . . . property. 49 U.S.C. §13102(23).

For "related services," such as "arranging for" movement of property, to be considered "transportation," the carrier must perform those services using a motor vehicle or other "… property, facility, instrumentality or equipment … related to the movement of property." *See, e.g., Titan Indem. Co. v. Gaitan Enters.*, 237 F. Supp. 3d 343, 348 (S.D. Md. 2017); *Walling v. Baltimore Steam Packet Co.*, 144 F.2d 130, 134 (1944) ("services in connection with" means those rendered while shipment is in custody and control of the carrier, or which it is legally obligated to perform).

---

[1] MCM alleges "Defendants were either 'freight forwarders' or 'motor carriers' and therefore . . . 'carriers'" (Compl. ¶¶31, 34). The Complaint does not allege facts showing that AIT met the statutory definition of a freight forwarder. 49 U.S.C. §13102(8)(A). *Interamerican Logistics, Inc. v. CSX Int'l, Inc.*, 1996 U.S. Dist. LEXIS 4501, *12 (N.D. Ill., No. 95C6472).

AIT made clear in its emails with MCM that it was not the carrier for the Machine, responding to Mr. Stump's advice that pickup of the machine might be delayed: "I will alert the carrier and wait to hear from you tomorrow." Sistler Decl. Ex. C, p. 3 (ECF No. 31-1, p. 23) (March 12, 2019, 4:55 p.m. email). MCM alleges no specific conduct by AIT to bring it within the "carrier" definition:

- "AIT entered into a contract with MCM pursuant to which AIT agreed to transport and/or arrange the transportation of the Machine" (Compl. ¶12);

- The Machine was delivered "to one or all Defendants at MCM's facility . . . which Defendants received, accepted and agreed to transport" (*id.* ¶13);

- "AIT engaged, subcontracted with, and/or arranged for Defendant JP Graham to transport by motor carriage the machine . . . ." (*id.* ¶14);

- "MCM was issued a Bill of Lading related to the shipment, signed by a driver who . . . was an employee of JP Graham" (*id.* ¶13);

- After JP Graham's truck crashed, "it was incumbent on MCM to repair and re-ship the Machine," AIT and JP Graham "were immediately notified" the Machine was damaged," and "MCM paid for the . . . Machine to be shipped back to its facility" to assess damages and begin repairs (*id.* ¶14-19).

Likewise, MCM does not allege facts to show AIT was a "delivering carrier" or "carrier who caused the loss or damage" under 49 U.S.C. §14706(d)(1) and (2); and these provisions do not apply where AIT acted as a broker, as discussed below.

### 2.  The Carmack Amendment does not apply to a broker like AIT.

AIT's forum selection clause must be enforced where it acted as a broker in arranging for transport of the Machine. Carmack covers actions against carriers; it

does not apply to actions against brokers.[2]  *See, e.g., Infinity Air, Inc. v. Echo Global Logistics, Inc.*, 2013 U.S.Dist. LEXIS 87450, *6 (D. Or., No. 3:13-cv-00307) (enforcing forum selection clause in credit application, which incorporated terms listed on defendant's website;  defendant who made agreements with carriers or shippers but did not pick up, ship or deliver goods, was a broker); *Total Quality Logistics v. Cavendish Farms, Inc.*, 2010 U.S. Dist. LEXIS 6052 (S.D. Ohio, No. 1:09-cv-221) (dismissing case pursuant to forum selection clause in broker's Terms and Conditions, incorporated in its agreement); *United Rd. Logistics LLC v. Alpha Transp. Grp., LLC,* 2017 U.S.Dist. LEXIS 216674 (E.D. Mich., No. 16-12128).

Determination of broker status depends on how a company holds itself out to the world and its relationship to the shipper, including whether the company simply arranged transport or indicated it would exert any control over the shipment, and whether it took legal responsibility for transporting the goods, regardless of who delivered them.  *Dabecca Nat. Foods, Inc. v. RD Trucking, LLC*, 2015 U.S.Dist. LEXIS 65680, *13-15 (N.D. Ill., No. 14C6100).  Here, AIT is registered as a broker, and advised MCM that it would arrange for a carrier to transport the Machine.  Sistler Decl. Ex. C, p. 3; Ex. F, p. 1.  MCM's May 23, 2019 bill of lading was signed by the JP Graham driver.  Compl. Ex. A.  MCM alleges in its second and third causes of

---

[2] A broker is, "a person, other than a motor carrier . . . that . . . sells, offers for sale, negotiates for, or holds itself out . . . as . . . providing, or arranging for, transportation by motor carrier for compensation."  49 U.S.C. §13102(2).

action against AIT as a broker (Compl. ¶¶38, 40, 47), that: "AIT agreed to transport and/or arrange the transportation of the Machine by motor carriage for certain consideration" (¶40); AIT functioned as a broker (¶41); AIT "failed to facilitate the Machine's shipment . . . in accordance with the Contract" (¶42). These facts and allegations show that AIT arranged for transport of the Machine, acting as a broker.

A bill of lading is a contract. *North Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.,* 5, 457 (7th Cir. 1996). AIT's bill of lading, to which MCM did not object, referenced the Tariff, which includes the forum selection clause. MCM cannot evade it by asserting an oral contract any more than by calling AIT a carrier.

### B. Even if the Carmack Amendment applies, that does not prevent application of the forum selection clause in AIT's Tariff.

"The Carmack Amendment allows carriers to establish various terms regarding shipments, often referred to as 'Tariffs.' Properly published tariffs are incorporated into any agreement between the shipper and the carrier." *Dickson v. UPS Store*, 69 N.E.3d 1157, 1161 (Ct. App. Ohio 2016). Here, AIT's Tariff clearly directed the forum for resolution of any disputes. Sistler Decl. Ex. A, ¶5.9.

MCM's excuses for not following the forum selection clause cannot withstand scrutiny. Mr. Stump says during negotiations, no one discussed or mentioned AIT's Tariff, and he did not review or read it before shipment; MCM did not sign AIT's Bill of Lading in connection with transportation of the machine; and he "did not assent" to the Tariff or forum selection clause, or consider them part of the contract.

Stump Aff. ¶¶2-8.  But willful blindness does not void AIT's forum selection clause.

MCM asserts AIT was a carrier; if so MCM was obliged to ask AIT for a copy of its Tariff.  *See* 49 U.S.C. §14706(c)(1)(B) ("If the motor carrier is not required to file its tariff . . . it shall provide . . . to the shipper, *on request of the shipper*, a written or electronic copy ….").  Mr. Stump does not deny receiving Mr. Ranspach's emails (Sistler Decl. Exs. C-D), and MCM's Ex. 1 includes AIT's footer referencing its Tariff.  While MCM claims confusion about which AIT terms would apply, the U.S. Domestic Terms and Conditions (the only ones on MCM's Ex. 3 that would plausibly apply) are identified and incorporated in the bills of lading that Mr. Ranspach sent Mr. Stump.  Sistler Decl. Exs. D, G.  Mr. Stump says he did not read or ask about AIT's terms, but not that he did not know what they said; he and MCM had previously accepted AIT bills of lading incorporating them, *id.,* Ex. E.  Mr. Stump does not dispute that MCM did not tell AIT it intended to give JP Graham a different bill of lading.  *See* Sistler Decl. ¶15.  This surreptitious, unilateral attempt at modification does establish a meeting of the minds as to new terms.

### C. MCM fails to show that Section 1404 factors preclude transfer.

Under *Atlantic Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49 (2013), the convenience test on which MCM relies in opposing transfer is irrelevant. *Atlantic Marine*'s progeny emphasize that a party opposing a motion to transfer must show that the *forum non conveniens* factors strongly weigh against transfer.  Further,

MCM overstates several factors as favoring it, which are at best neutral.[3]

Mere inconvenience or additional expense does not prove unreasonableness.

*I.E. Liquidation, Inc. v. Litostroj Hydro, Inc.*, 2009 Bankr. LEXIS 1448, *27 (Bankr.

N.D. Ohio, Nos. 06-62179, 08-6077, 08-6078).   As in *M/S Bremen v. Zapata Off-

Shore Co*., 407 U.S. 1, 17-18 (1972), any inconvenience to MCM from litigating in

Illinois under its contract with AIT "was clearly foreseeable at the time of

contracting," so to avoid compliance MCM must show that trial in Illinois will be so

difficult and inconvenient as to deprive it of its day in court.   It cannot do so.

For the foregoing reasons, AIT submits that its motion must be granted.

/s/ David J. Stein
David J. Stein (P# P84108)
Masuda, Funai, Eifert & Mitchell, Ltd.

---

[3] As to *witness convenience*, MCM focuses on potential witnesses in Michigan, including *many* it claims must testify about repairs to the Machine, but it is unlikely that this is necessary. AIT's 30(b)(6) witness will be at its Illinois headquarters, and likely testify on matters relating to its Tariff; email policy; bills of lading; and broker status, including in this transaction. *Audi AG v. D'Amato*, 341 F. Supp. 2d 734, 750 (E.D. Mich. 2004) (one chief witness's convenience may outweigh the convenience of other less significant witnesses). As to the *cost of obtaining willing witnesses*, MCM's claim that it will be "considerably more expensive" to try this case in Illinois is illogical, given the relatively small number of necessary witnesses in Michigan. As to the *practical difficulties of trying the case*, MCM asserts this is redundant of Factor Three, which it agrees is neutral since digital records will be "the primary source of proof." Opp. pp. 20-22. MCM's justification that it should stay in Michigan because the "majority of witnesses" (of likely less than six) are there, and concern about travel for depositions, are overstated (especially assuming remote depositions due to COVID). As to the *interests of justice*, MCM's complaints of "substantially greater expenses" (a few plane tickets and hotel rooms) and a "grave injustice" if the case does not proceed in Michigan, is unsubstantiated hyperbole.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing was filed electronically.

Notice of this filing will be sent by operation of the Court's electronic filing system

to all parties indicated on the electronic filing receipt.  All other parties will be served

by regular U.S. Mail, if necessary.  Parties may access this filing through the Court's

electronic filing system.

Dated:  September 29, 2020

/s/ David J. Stein
David J. Stein
Masuda, Funai, Eifert & Mitchell, Ltd.
39555 Orchard Hills Place, St. 600
Novi, Michigan 48375
P:  (312) 245-7500
F:  (312) 245-7467
dstein@masudafunai.com

Mazzola Lindstrom LLP
Wendy Lindstrom *(admission pending)*
Laura D. Castner *(admission pending)*
Hanoch Sheps *(admission pending)*