UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN CUSTOM MACHINES, INC.,

       Plaintiff,

v.

                                      Case No. 2:20-cv-11644
                                      Hon. Laurie J. Michelson

AIT WORLDWIDE LOGISTICS, INC. and    Mag. R. Steven Whalen
JP GRAHAM TRANSPORT, INC.,

       Defendants.

_____

**DEFENDANT JP GRAHAM TRANSPORT, INC.'S MEMORANDUM ON
DEFENDANT AIT WORLDWIDE LOGISTICS, INC'S MOTION TO
DISMISS OR TO TRANSFER VENUE**
_____

Kristen M.J. Johnson, Esq.
TAYLOR & ASSOCIATES,
ATTORNEYS AT LAW, P.L.
20 3rd Street SW, Suite 209
Winter Haven, FL 33880
(863) 875-6950 (tel)
(863) 875-6955 (fax)
kjohnson@taylorlawpl.com
efiling@taylorlawpl.com
lroberts@taylorlawpl.com

*Counsel for Defendant JP Graham
Transport, Inc.*

## I.     INTRODUCTION

Defendant JP Graham Transport, Inc. ("JPG"), submits this brief with leave of Court (Dkt. 17) in support of Defendant AIT Worldwide Logistics, Inc.'s ("AIT") Motion to Transfer Venue or to Dismiss ("Venue Motion"; Dkt. 13).[1] Plaintiff Michigan Custom Machines, Inc. ("MCM") assented to AIT's bill of lading and its incorporated U.S. Domestic Terms and Conditions ("tariff"); the Carmack Amendment governs this matter entirely; and the tariff as a whole must be deemed applicable, causing transfer of this case to Illinois consistent with the tariff's venue provision.[2]

JPG is a motor carrier that AIT, a carrier and/or intermediary, tasked to deliver a machine from Michigan to South Carolina for shipper, MCM. The JPG vehicle making the delivery was involved in an accident, and the machine suffered some level of damage. MCM filed suit against both AIT and JPG as carriers under the Carmack Amendment.

Based on the venue provision in AIT's tariff, AIT filed the Venue Motion. JPG similarly relied on the tariff's venue provision in asserting improper venue as its First Affirmative Defense. (Dkt. 12). The Venue Motion, along with MCM's

---

[1] JPG mostly concurs with AIT's relief requested. JPG does not agree with the assertion that the Carmack Amendment does not apply to AIT or to this case.

[2] The venue provision in AIT's tariff is found on page 4-5 of the Venue Motion and in Ex. A to the Sistler Affidavit accompanying the Venue Motion. The agreed venue is the state or federal courts of DuPage or Cook County, Illinois.

Opposition to the Venue Motion ("Opposition" or "Opp.") (Dkt. 14), and AIT's Reply ("Reply") (Dkt. 16), raise three factual and legal issues addressed in this brief: (1) MCM's unrebutted acceptance of AIT's tariff; (2) the applicability of the Carmack Amendment; and (3) the inapplicability of the Carmack Amendment's special venue provision. AIT's tariff and its venue provision should be enforced.

## II.   ARGUMENT

### a.   MCM Accepted AIT's Tariff.

AIT submitted unrebutted evidence with its Venue Motion that establishes MCM's assent to the tariff. This Court may consider evidence outside of the four-corners of the Complaint when ruling on a motion to transfer venue. *See Price v. PBG Hourly Pension Plan*, 921 F.Supp.2d 764, 772 (E.D. Mich. 2013). AIT submitted facts in the Declaration of Dan Sistler ("Sistler Declaration") that conclusively establish MCM's assent to AIT's tariff. Nothing alleged in the Affidavit of Jason Stump, submitted with the Opposition ("Stump Affidavit"), rebuts MCM's assent to the tariff. AIT's Sistler Declaration establishes:

- On May 21, 2019, two days before the subject machine shipped, AIT emailed AIT's bill of lading for the subject shipment to MCM. (Sistler Dec., ¶ 7).

- The AIT bill of lading specifically incorporates AIT's tariff in two conspicuous places—next to the "declared value" box and in the bottom right corner—both in all capital letters. (Sistler Dec. ¶ 7; AIT Bill of Lading, Ex. D).

- Emails from AIT to MCM repeatedly reference and incorporate AIT's tariff and provide a link to the tariff. (Sistler Dec. ¶ 5, Exs. C and D).

- Between the time AIT issued its bill of lading and MCM shipped the machine, AIT and MCM exchanged many emails and MCM never challenged, disapproved, or provided counter-terms to the tariff. (Sistler Dec., ¶ 8, Ex. D).

- AIT and MCM had prior business under the tariff. (Sistler Dec., ¶ 10, Ex. F).

In the responding Stump Affidavit, MCM offers only incorrect legal conclusions and statements which are belied by the documentary evidence. For instance, at ¶ 4, the Stump Affidavit states, "[a]t no point during the negotiation and/or related communications regarding the shipment of the Machine did anyone discuss or mention AIT's Terms and Conditions." This is patently false because the AIT bill of lading incorporates the tariff (or "Terms and Conditions") *twice*, and MCM does not dispute it received the bill of lading attached to AIT's May 21, 2019 email. Additionally, as MCM's counsel admits in the Opposition, MCM received many emails from AIT with AIT's email footer directing MCM to the tariff. That Mr. Stump's did not read the bill of lading[3] and did not scroll down to the bottom of his emails (Opp. at 3) does not mean he was not put on notice of the tariff.

---

[3] Mr. Stump admits (at ¶ 7) he did not read the tariff, which, of course, is different from not receiving the bill of lading or the tariff, which he undisputedly did.

In another similarly flawed paragraph of his affidavit, Mr. Stump states, "[w]hen I agreed to the contract for the shipment of the Machine, I did not assent to AIT's Terms and Conditions or its Forum-Selection Clause, and I did not consider AIT's Terms and Conditions or its Forum-Selection Clause to be part of the contract." (Stump Aff., ¶ 8). This is both an incorrect legal conclusion[4] and is belied by the documentary evidence. Assent is a legal condition that can arise from the circumstances or come in many forms (discussed below). Assent does not have to be the proverbial spoken or written "I agree," making Mr. Stump's statement an incorrect legal conclusion, not counter-evidence. Further, the statement is contradicted by MCM's failure to dispute the tariff,[5] its failure to provide counter-terms, and its subsequent shipment of the machine using AIT and JPG. Lastly, in the same paragraph, Mr. Stump's reference to the "contract for the shipment," can only refer to the contract for shipment AIT provided, its bill of lading inclusive of its tariff, because no other contract exists.[6] Absent a pre-shipment rebuke of the

---

[4] On motions such as this, the Court "need not accept as true a legal conclusion couched as a factual allegation." *MTS Logistics, Inc. v. Innovative Commodities Group, LLC*, 442 F.Supp.3d 738, 746 (S. D. N. Y. 2020).

[5] Notwithstanding multiple opportunities to lodge a dispute at any point in the lengthy email dialogue between MCM and AIT. (Sistler Dec. ¶ 5, Ex. C, Ex. D).

[6] It is undisputed that the bill of lading that MCM gave to the JPG driver who transported the load was provided concurrent with the movement of the subject machine, and not beforehand. (See Complaint, ¶ 15). A bill of lading can be a receipt or a contract (or both). "[A bill of lading] serves as receipt, because it describes the goods and lists their weight and quantity…But as a contract, the usual bill contains other information as well; it names the contracting parties,

tariff or the tendering of counter-terms (neither of which happened), MCM cannot separate the tariff from the "contract for the shipment," as Mr. Stump and MCM appear to want to do in hindsight. With it undisputed that MCM received terms, did not object to those terms, and shipped the product using the provider of those terms, MCM, a sophisticated shipper, cannot now seek to avoid those terms by declaring a lack of mutual assent, and the law does not afford it such an opportunity.

Throughout the Opposition, MCM relies on a variety of non-transportation cases for cherry-picked, general contract principles designed to create the illusion that MCM had to give an unequivocal written "yes" to the tariff, which, of course, is not the law, particularly for a sophisticated shipper in the transportation or commerce context. The Carmack Amendment governing all interstate shipments specifically provides that a tariff governs these transactions if held by the carrier and available "on request of the shipper." 49 U.S.C. § 14706 (c)(1)(B). In *Ingram Barge Company, LLC v. Bunge North America, Inc.*, 455 F.Supp.3d 558 (M.D.

---

specifies the rate or charge for transportation, and sets forth the agreement and stipulations with respect to the limitations of the carrier's common-law liability in the case of loss or injury to the goods and other obligations assumed by the parties or to matters agreed upon between them." *Schneider Nat. Carriers, Inc. v. Rudolph Exp. Co., Inc.*, 855 F.Supp. 270, 274 (E.D. Wisc. 1994). A comparison of the AIT bill of lading and the MCM bill of lading demonstrates that the comprehensive AIT bill of lading falls on the contract-side of this analysis, while the bare-bones MCM "bill of lading" could only have been intended as a receipt.

Tenn. 2020), for example, the district court found that the sophisticated shipper had indicated assent to the venue provision contained in the defendant's incorporated tariff because the shipper "was aware of the form of the bills of lading for the [] shipments, [and] it—as a sophisticated entity that routinely ships grain—should have known that it would be treated as the consignor under the bills, regardless of the fact that it was arranging for the freight through an intermediary." The *Ingram* court further found that the shipper's repeated use of the intermediary and its bill of lading, without requesting changes, "is an objective manifestation that it accepted that it would be bound in the ordinary manner of a consignor itself." Actions and inactions can manifest assent, and MCM's conduct here, which goes unrebutted, manifested its assent to AIT's tariff.

As to the applicability of terms incorporated from a website (like AIT's tariff), it has been held that contracts may "validly incorporate terms from a website in the same manner that they may incorporate by reference terms from paper documents" *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 269 (5th Cir. 2011). The touchstone in such situations "is whether the party to be bound had reasonable notice of the terms at issue." *Id.* (citing *Feldman v. Google, Inc.*, 513 F.Supp.2d 229, 236–37 (E.D. Pa. 2007)). In *Ingram*, the court held that whether the shipper had reasonable notice of the incorporated terms was questionable *only for the first shipment*, but "[t]hereafter, however, the notice was

adequate on its face." *Ingram,* 455 F.Supp.3d 558. (Emphasis supplied). Having undisputedly worked with AIT before and having shipped on the same version of AIT's bill of lading, incorporating its same tariff, MCM cannot now feign unawareness[7] and disclaim knowledge of the tariff terms.

While clear that MCM assented to AIT's tariff, inclusive of its venue provision, to the extent this Court determines there are factual issues related to MCM's assent to, or the applicability of, AIT's tariff, it has the discretion to hold a hearing on such disputes after permitting discovery for the limited purpose of determining these threshold issues. *See Juncker v. Czarnocki*, 1:09–CV–662, 2010 WL 11537478 (W.D. Mich Feb. 9, 2010). While the applicability of the tariff's venue provision is a central issue of the Venue Motion, JPG and AIT's primary defense-in-chief is also reliant on the applicability of AIT's tariff. AIT's tariff applies to JPG as a downstream motor carrier of the subject machine. *See Tokio Marine & Nichido Fire Insurance Co. Ltd. v. Flash Expedited Service, Inc.*, 2:12-CV-1057, 2013 WL 4010312 (S.D. Ohio E.D. Aug. 6, 2013). JPG would request that this Court, should it not find MCM's assent to the tariff as a matter of undisputed fact, permit limited discovery and conduct initial fact finding before

---

[7] The Opposition also argues that MCM is confused as to which tariff applies because AIT's website contains different tariffs with different applications. (Opp. at 4-5). This argument fails because AIT's bill of lading has clear language that says (in two places) that the bill of lading is subject to the "U.S. DOMESTIC TERMS AND CONDITIONS." MCM's argument is disingenuous.

ruling on the tariff's applicability pre-discovery.

     **b.**    <u>**The Carmack Amendment Applies.**</u>

     AIT cannot override the applicability of the Carmack Amendment to this dispute by proclaiming, without supporting sworn facts and in a reply brief, that it acted solely as a broker in the subject transaction. The provisions of the Carmack Amendment govern the potential liability of motor carriers for damage to a shipper's goods. *See Codan Forsikring A/S v. ConGlobal Industries, Inc.*, 315 F.Supp.3d 1085 (N.D. Ill. 2018). Also, the Carmack Amendment does not attach liability to transportation brokers who serve only in that capacity as to the subject transaction and do not act as carriers. *See J & J Logistics, LLC v. Reilly Transportation, Inc.*, 09-80639-RYSKAMP/VITUNAC, 2009 WL 10668955 (S.D. Fla. Dec. 29, 2009) ("…by its terms, the Carmack Amendment governs carriers, not brokers. 49 U.S.C. § 14706(a)…"). By its Reply, AIT prematurely attempts to disavow the application of the Carmack Amendment to it because AIT claims to be a broker, not a motor carrier. (Reply, II (A)(1)). AIT, who enjoys both a motor carrier and freight forwarder authority from the Federal Motor Carrier Safety Administration (FF-5278 and MC-209107), attempts to rely on select provisions of the Complaint in its effort to be absolved of Carmack Amendment liability and applicability, but those efforts fail at this early pleading stage.[8]

---

[8] JPG's position at this early stage is that it is too early for the Court to rule

A "broker" is defined as "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2). A "motor carrier," on the other hand, is defined as "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). The distinction, then, "between a broker and a motor carrier is whether a party provides transportation with regard to a given shipment, or whether it sells, negotiates, or holds itself out as providing transportation of that shipment." *Essex Insurance Company v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, 1300 (11th Cir. 2018). "[T]he line between 'providing' transportation and 'selling' transportation is a blurry one." *Id.*

As AIT correctly indicated, it is the party's role "in the transaction at issue" and not how it holds itself out or how it acts in the ordinary course that is determinative of its classification in a given transaction. *Codan*, 315 F.Supp.3d at 1091. The operative inquiry in making the distinction is "with whom did the shipper entrust the cargo." *Essex*, 885 F.3d at 1300-02. "This is necessarily a case-specific analysis, and as a result, summary judgment might not be appropriate in

definitively on AIT's role in the transaction without hearing evidence on that issue and therefore the Court must not make a finding that the Carmack Amendment does not apply.

many cases." *Id*. (citing *Nipponkoa Ins. Co., Ltd. v. C.H. Robinson Worldwide, Inc.*, No. 09 Civ. 2365 (PGG), 2011 WL 671747, at *5 (S.D.N.Y. Feb. 18, 2011)). If not appropriately determined on summary judgment, *a fortiori*, it is not appropriate on a motion to dismiss.

In *Codan* (a case cited by AIT), the Court found that the shipper's amended complaint which alleged that defendant, ConGlobal Industries, Inc., who claimed to be a broker only, moved the goods a limited distance to the ultimate carrier of the goods was sufficient to survive a motion to dismiss. *Codon*, 315 F.Supp.3d at 1091. ("Moving the [goods] to the rail terminal would qualify as moving property under the Carmack Amendment. It matters not that ConGlobal is alleged to have only carried the cargo for a limited distance, and only intrastate."). The defendant's denial of moving the cargo was immaterial given the procedural status of case. *Id*. Here, the Complaint alleges enough for AIT to potentially be considered a motor carrier as to the subject transaction because it alleges that AIT:[9]

- agreed "*to transport* and/or arrange the transportation of the Machine," (¶ 12, emphasis supplied);

- received delivery of the subject machine (¶ 13);

---

[9] Nothing stated herein should be taken as JPG's admission as to the cited provisions of the Complaint. JPG's sole point is that MCM has sufficiently alleged a Carmack Amendment claim against AIT.

- was a freight forwarder or motor carrier as defined by the Carmack
Amendment (¶ 31); and

- exhibited custody and/or control over the subject machine (¶ 32).

Like in *Codan*, AIT's denial of its potential status as a motor carrier is immaterial. The Carmack Amendment applies to this matter, and MCM's claim thereunder against AIT should survive.

### c. **The Carmack Amendment Does Not Preempt Contractual Venue Provisions in Transportation Contracts Unless the Contract is for the Movement of Household Goods.**

MCM is effectively arguing that every venue provision in every transportation contract is prima facia invalid, which would be noteworthy news to the transportation industry as such clauses are commonplace. While the Carmack Amendment clearly governs this proceeding, its special venue provision does not. MCM's argues that even if the venue provision of the tariff applied, it would be preempted by the special venue provision of the Carmack Amendment, but this argument is a misreading of the current law.

The special venue provision of the Carmack Amendment is found in 49 U.S.C § 14706(d) and would apply to this case absent MCM and AIT's explicit agreement to the contrary (the tariff). The special venue provision, however, does not preempt or defeat the tariff because 49 U.S.C. § 14101(b) permits parties to

contract around the Carmack Amendment, *including the special venue provision*.

49 U.S.C. § 14101(b) provides:

> **(1) In general.**--A carrier providing transportation or service subject to jurisdiction under chapter 135 *may enter into a contract with a shipper, other than for the movement of household goods described in section 13102(10)(A), to provide specified services under specified rates and conditions. If the shipper and carrier, in writing, expressly waive any or all rights and remedies under this part for the transportation covered by the contract, the transportation provided under the contract shall not be subject to the waived rights and remedies and may not be subsequently challenged on the ground that it violates the waived rights and remedies.* The parties may not waive the provisions governing registration, insurance, or safety fitness. (Emphasis supplied).

Accordingly, where a transportation contract is not for the movement of household goods, a party can waive any right or remedy it would otherwise be afforded under the Carmack Amendment, unless such right or remedy governs registration, insurance, or safety fitness. The special venue provision is eligible to be, and was, waived when MCM assented to AIT's tariff containing an alternative venue provision.

In asserting that the special venue provision always applies, the Opposition relies on a series of cases which, when read carefully, align with this text. The Opposition first cites is *Smallwood v. Allied Van Lines, Inc.*, 660 F.3d 1115 (9th Cir. 2011), which is instructive and distinguishable from this case because it *is a case involving the movement of household goods* and the *Smallwood* court relied on the express prohibition of "*carriers of household goods* from contracting

around the statute's requirements." *Id.*, at 1121 (citing 49 U.S.C. § 14101(b)(1)) (emphasis supplied). In contrast, MCM did not ship household goods, so it was free to, and did, contract around the special venue provision.

Also, the Opposition refers to *Stewart v. American Van Lines*, 4:12CV394, 2014 WL 243509 (E.D. Tex. Jan. 21, 2014), another household goods case. *Stewart* is therefore also inapplicable. The remaining three other cases cited by MCM fail to note the waiver provision of 49 U.S.C. § 14101. Those cases — *Dabecca Nat. Foods, Inc. v. RD Trucking, LLC*, No. 14 C 6100, 2015 WL 2444505 (N.D. Ill. May 20, 2015) (relying on, but incorrectly not distinguishing itself from, *Smallwood*); *Celtic Int'l, LLC v. J.B. Hunt Transp., Inc.*, 234 F.Supp.3d 1034 (E.D. Cal. 2017); and *Kyodo U.S.A., Inc. v. Cosco N. Am. Inc.*, No. 01-CV-499, 2001 WL 1835158 (C.D. Cal. July 23, 2001) — are not reliant on the shipper being one of household goods, yet none of those cases mention 49 U.S.C. § 14101, casting doubt on their analysis. None of those cases are binding on this Court.

49 U.S.C. § 14101 no doubt allows choice of venue between commercial parties. For example, in *Scotlynn USA Division, Inc. v. Singh*, 2:15–cv–381–FtM–29MRM, 2016 WL 8679295 (M.D. Fla. Sept. 9, 2016), the plaintiff filed in the venue designated in the parties' transportation contract and the defendant moved to change venue under the special venue provision. *Id.* at *1. The district court

explicitly found that the special venue provision did not trump the forum selection clause in the parties' contract. *Id.* at *2. The *Scotlynn* Court distinguished commercial transactions from *Smallwood*:

> The Court agrees that this case is distinguishable, but for the reason that *it does not involve the transportation of household goods, and therefore the parties can contract around the provisions of the Carmack Amendment*. *See Smallwood v. Allied Van Lines, Inc.*, 660 F.3d 1115, 1121 (9th Cir. 2011) (finding that defendant was a carrier of household goods and therefore prohibited from contracting around the Carmack Amendment). As a result, the parties are free to expressly waive the rights and remedies under the Carmack Amendment, *including venue*. 49 U.S.C. § 14101(b).

> *Scotlynn*, 2016 WL 8679295 at *2 (Emphasis supplied).

It is true that the special venue provision exists to provide shippers with a choice of forum convenient to them. *Smallwood*, 660 F.3d at 1121. 49 U.S.C. § 14101(b) does not frustrate that purpose. Instead, 49 U.S.C. § 14101(b) gives sophisticated shippers the ability to bargain away choice of venue in exchange for e other consideration, while protecting household goods shippers (who are often homeowners, not business entities) from potential abuse by moving companies. Where a commercial shipper, however, agrees to a venue provision, the shipper is not having its ability to choose venue taken away, but is rather making that venue choice as part of a business decision written into a contract to which they assent. 49 U.S.C. § 14101(b) is not inconsistent with, nor does it frustrate the purpose of, the special venue provision.

14

AIT's tariff formed a binding agreement with MCM when MCM was placed on notice and shipped the machine. AIT's tariff contains a valid venue provision, and it is allowed to contain such a provision because 49 U.S.C. § 14101 permits parties to contract around "any or all rights and remedies" afforded by the Carmack Amendment, including the special venue provision, so long as the contract is not one for household goods. AIT venue provision is valid and should be enforced.[10]

### III.   CONCLUSION

MCM sufficiently pled this matter as a Carmack Amendment case against both JPG and AIT. Although the Carmack Amendment applies, its special venue provision does not because this is not a case involving the transportation of household goods. MCM is a sophisticated shipper who had done business with AIT prior to the subject transaction. By its conduct, it consented to AIT's tariff which contains a venue clause. That venue clause is entitled to be enforced because parties to a transportation contract can contract around any provision of the Carmack Amendment they so choose. Here, MCM agreed to litigate any issues with AIT in Illinois. It cannot now disclaim its knowledge of AIT's tariffs. The

---

[10] JPG supports and defers to AIT's arguments concerning why the venue in Illinois is at least as convenient as our current venue in Michigan. With one party in Michigan (MCM), one in Illinois (AIT), and one in Pennsylvania (JPG), there is no venue which is practically more convenient than any other.

Carmack Amendment applies. The tariffs apply. The special venue provision does not.

For the forgoing reasons, JPG requests that the Court rule on the Venue Motion consistent with the arguments raised in this brief.

Date: October 15, 2020                    Respectfully submitted,

                                          /s/ Kristen M.J. Johnson
                                              Kristen M.J. Johnson, Esq.
                                              TAYLOR & ASSOCIATES,
                                              ATTORNEYS AT LAW, P.L.
                                              20 3rd Street SW, Suite 209
                                              Winter Haven, FL 33880
                                              (863) 875-6950 (tel)
                                              (863) 875-6955 (fax)
                                              kjohnson@taylorlawpl.com
                                              efiling@taylorlawpl.com
                                              lroberts@taylorlawpl.com

                                          *Counsel for Defendant JP Graham Transport, Inc.*

                                          Adam C. Zwicker (P73672)
                                          GALLAGHER SHARP LLP
                                          211 W. Fort St., Ste. 660
                                          Detroit, MI 48226
                                          (313) 962-9160 / 9167 Fax
                                          azwicker@gallaghersharp.com

                                          *Local Rule 83.20 Counsel for Defendant JP Graham*

## CERTIFICATE OF SERVICE

This is to certify that on October 15, 2020, the forgoing document was filed with the Clerk of Court using the CM/ECF System. Notice will be sent to all counsel of record and/or parties by operation of the Court's electronic case filing system.

16

Parties may access this through the Court's electronic case filing system.

<u>/s/ Kristen M.J. Johnson</u>