UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MICHIGAN CUSTOM MACHINES, INC., <br><br> Plaintiff, <br><br> v. <br><br> AIT WORLDWIDE LOGISTICS, INC., and JP GRAHAM TRANSPORT, INC., <br><br> Defendants. | Case No. 20-11644 <br> Honorable Laurie J. Michelson <br> Magistrate Judge Steven R. Whalen |

**OPINION AND ORDER
DENYING AIT'S MOTION TO TRANSFER VENUE [13]**

Plaintiff Michigan Custom Machines, Inc. ("MCM") filed this suit against AIT Worldwide Logistics, Inc. ("AIT") and JP Graham Transport, Inc. ("JP Graham") after one of its machines was damaged in a crash while JP Graham was transporting it from Michigan to South Carolina. MCM asserts claims against both Defendants under the Carmack Amendment, 49 U.S.C. § 14706, and against AIT for breach of contract and negligence.

AIT moves to transfer venue, citing a forum selection clause in its Terms and Conditions, which were linked at the bottom of AIT's emails with MCM when they negotiated the transport of the machine. MCM counters that the Carmack Amendment's special venue rules preempt any forum selection clause. JP Graham filed a supplemental brief in support of enforcing the forum selection clause, arguing that while the Carmack Amendment governs this proceeding, its special venue provision does not. For the reasons given, the Court denies the motion to transfer venue.

**I. Background**

MCM hired AIT to transport a fuel injector machine from Novi, Michigan to an MCM customer in Greenville, South Carolina. AIT contracted with JP Graham Transport, Inc. ("JP

Graham") to transport the machine. (JP Graham, not AIT, actually transported the machine.) But the machine was damaged in a crash on the way to Greenville. MCM filed this suit against AIT and JP Graham to recover damages, asserting claims against both Defendants for violation of the Carmack Amendment, 49 U.SC. § 14706, and against AIT for breach of contract and negligence. (ECF No. 1.)

AIT moves to transfer this action to the Northern District of Illinois, based on the forum selection clause in its U.S. Domestic Terms and Conditions of Contract of Carriage (also called its "Terms and Conditions" or "Tariff"), which were linked at the bottom of its emails to MCM when they negotiated the deal. (ECF No. 13, PageID.75.)

MCM responds that their contract was oral, not written, and that the Eastern District of Michigan is the proper venue according to the traditional venue analysis under 28 U.S.C. 1404(a). (ECF No. 14, PageID.178.) And MCM argues that even if it *did* assent to AIT's Terms and Conditions by failing to object to the terms linked in the email, the venue provision in the governing Carmack Amendment trumps the forum selection clause in the Terms and Conditions. (ECF No. 14, PageID.175.)

## II. Venue

The parties' venue dispute raises two core questions. First, whether the parties assented to the forum selection clause in AIT's Terms and Conditions. Second, whether the Carmack Amendment preempts that forum selection clause. Here, it is most efficient to start with the latter question.

### A. Carmack Preemption

As the Sixth Circuit has observed, the Carmack Amendment "created a national scheme of carrier liability for loss or damages to goods transported in interstate commerce." *Exel, Inc. v.*

*Southern Refrigerated Transport, Inc*., 807 F.3d 140, 148 (6th Cir. 2015). Enacted in 1906 as an amendment to the Interstate Commerce Act, 24 Stat. 379, the Carmack Amendment "makes a motor carrier fully liable for damage to its cargo unless the shipper has agreed to some limitation in writing." *Id.* (citing 49 U.S.C. § 11706(a), (c), § 14101(b)). Strict liability simplifies causation and apportionment of liability in shipping claims. *Id.* MCM asserts its Carmack Amendment claim against AIT and JP Graham on that basis: that by receiving the machine in good order and condition and then failing to deliver it in the same condition, Defendants breached their statutory duty under the Carmack Amendment. (ECF No. 1, PageID.6.)

"Carmack also limits the parties' ability to choose the venue of their suit." *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp*., 561 U.S. 89, 98 (2010). Indeed, 49 U.S.C. § 11706(d)(2)(A) provides that a civil action against a "delivering carrier . . . may be brought against a delivering carrier in a district court of the United States or in a State court . . . in a State through which the defendant carrier operates." 49 U.S.C. § 14706(d)(1). Additionally, a civil action under this section may be brought against the carrier alleged to have caused the loss or damage "in the judicial district in which such loss or damage is alleged to have occurred." *Id.* § 14706(d)(2).

MCM argues that this special venue provision preempts any forum selection clause. (ECF No. ECF No. 14, PageID.176–177.) MCM maintains that the Eastern District of Michigan is a proper venue because JP Graham, the delivering carrier, operates in Michigan and was operating in Michigan when it picked up the Machine from MCM's Novi facility. (*Id.* at PageID.178.)

But as JP Graham points out in its supplemental brief, the special venue provision is not absolute. (*See* ECF No. 18, PageID.288–289.) Under Section 14101(b) of the Carmack Amendment, a shipper and carrier "can enter into an agreement waiving rights under the statute."

3

*Exel, Inc. v. S. Refrigerated Transp., Inc.*, 807 F.3d 140, 149 (6th Cir. 2015). Section 14101(b) provides:

> A carrier providing transportation or service subject to jurisdiction under chapter 135 may enter into a contract with a shipper, other than for the movement of household goods described in section 13102(10)(A), to provide specified services under specified rates and conditions. *If the shipper and carrier, in writing, expressly waive any or all rights and remedies under this part for the transportation covered by the contract*, *the transportation provided under the contract shall not be subject to the waived rights and remedies and may not be subsequently challenged on the ground that it violates the waived rights and remedies*. The parties may not waive the provisions governing registration, insurance, or safety fitness.

49 U.S.C.A. § 14101(b) (emphasis added). This provision allows parties to contract around the "rights and remedies" of the Carmack Amendment, unless the goods to be transported are household goods, and except for rights and remedies "governing registration, insurance, or safety fitness." *Id.*

Because MCM and AIT contracted to transport goods that were not household goods and the contract term at issue does not govern registration, insurance, or safety fitness, MCM and AIT were free to include a forum selection clause in their agreement, thereby waiving the venue provisions under the Carmack Amendment.

So far, so good for AIT. But two new questions arise. Do terms and conditions linked at the bottom of an email satisfy the Carmack Amendment's exception "if the shipper and carrier, *in writing*, *expressly waive* any or all rights and remedies under [the Amendment]"? 49 U.S.C. § 14101(b) (emphasis added). And if AIT says it was acting as a broker in this transaction, and the Carmack Amendment does not apply, does the traditional venue analysis under 42 U.S.C. § 1404 necessarily require transfer?

4

### B. Express Waiver

AIT and JP Graham maintain that the forum selection clause expressly waives the Carmack Amendment because it expressly selects a venue to the exclusion of any other. (ECF No. 13, PageID.86.) The forum selection clause provides: "any action arising from or related to these Terms and Conditions shall be prosecuted in the state or federal courts of DuPage or Cook County, State of Illinois, USA, to the exclusion of any other venue, and the parties hereby consent to the exclusive jurisdiction of said courts." (ECF No. 13-1, PageID.108.) AIT argues this clause was incorporated through the Terms and Conditions linked in AIT's email even if the contract was "partially oral." (ECF No. 13, PageID.86.) MCM counters that the parties never agreed to the Terms and Conditions containing the forum selection clause. (ECF No. 14, PageID.170.)[1]

But even assuming, without deciding, that the parties did assent to AIT's Terms and Conditions, the forum selection clause here does not "expressly waive" the Carmack Amendment. Federal courts construing forum selection clauses apply federal common law. *Quicken Loans v. RE/MAX, LLC*, 216 F. Supp. 3d 828, 833 (E.D. Mich. 2016) (citing *Wong v. PartyGaming, Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009)). Again, the statute allows parties to contract around its provisions "if the shipper and carrier, *in writing*, *expressly waive* any or all rights and remedies

---

[1] Specifically, MCM says AIT did not provide "reasonably conspicuous notice of the terms" through a link at the bottom of a series of emails, which led to a website listing twelve different Terms and Conditions, several of which could have appeared to apply to the parties' agreement based on titles like "AIT U.S. Domestic Terms and Conditions" or "AIT U.S. Customs Brokerage and Freight Forwarding Terms and Conditions," and MCM could not have given unambiguous assent where twelve different sets of terms could have applied. (ECF No. 14, PageID.180–186.) AIT counters that the email was sufficient notice, that MCM never raised any question or objection about the terms, and that MCM was a sophisticated contracting party that would know better than to assume an oral contract. (ECF No. 13, PageID.75–76, 86–87.) In the alternative, AIT argues that it provided notice of the Terms and Conditions through AIT's Bill of Lading, which AIT emailed to MCM when it confirmed the shipment date. (ECF No. 13, PageID.86; ECF No. 16, PageID.263.)

under [the Amendment]." 49 U.S.C. § 14101(b) (emphasis added). While AIT (and JP Graham) are correct that the forum selection clause here expressly selects a venue, this is an argument for an implicit waiver of the Carmack Amendment.

Although the Sixth Circuit has not addressed this question, other federal courts have rejected the idea that an implicit waiver satisfies the statute. These courts interpret the statute to mean what it says: to "expressly waive" the Carmack Amendment, parties must expressly reference the Amendment in some way, by name, citation, or some other means. The Southern District of New York recently published an opinion surveying cases and distilling this rule. *See Aviva Trucking Special Lines v. Ashe*, 400 F. Supp. 3d 76, 79–80 (S.D.N.Y. 2019). The court explained that federal courts "have refused to imply waivers of the Carmack Amendment from contract provisions that were not express waivers." *Id.* at 80 (collecting cases). In an unpublished opinion, the Fifth Circuit found there is "no express waiver of Carmack Amendment liability" where the provision, allegedly incorporated by reference into a contract of carriage, "does not refer to the Carmack Amendment in any way." *Cont'l Ins. Co. v. Saia Motor Freight Line, Inc.*, 210 F. App'x 381, 382 (5th Cir. 2006). Similarly, the Eastern District of North Carolina, relying on extended analysis by a Texas appeals court, concluded that because "the plain meaning of 'expressly' is 'clearly and unmistakably communicated,'" under the plain meaning of the Carmack Amendment, "for a waiver to be effective, the agreement between the shipper and the carrier must communicate clearly and unmistakably or directly state that the rights or remedies in question are waived." *McKesson Corp. v. Longistics Transportation, Inc.*, No. 5:09-CV-250-F, 2010 WL 11564989, at *6 (E.D.N.C. Nov. 4, 2010) (quoting *Celadon Trucking Servs., Inc. v. Titan Textile Co., Inc.*, 130 S.W.2d 301, 305 (Tex. Ct. App. 2004)). Other courts have restated the same principle in various ways. *See Phillips 66 Co. v. Smith Tank & Equip. Co.*, No. 4:17-cv-0388, 2018 WL

4334007, at *3 (S.D. Tex. July 31, 2008) (holding that a generic forum selection clause that "makes no reference to the Carmack's claims or remedies" is merely "an implicit waiver of Carmack rights and remedies, which is insufficient under 49 USC 14101(b)(1)"); *MidAmerican Energy Co. v. Start Enters., Inc.*, 437 F. Supp. 2d 969, 973 (S.D. Iowa 2006) (holding that a generic Iowa choice of law provision was not "sufficiently explicit to express an intent to avoid the rights and remedies of the Carmack Amendment"). And the sole authority from a Michigan federal court has followed the same reasoning. *See Central Transp. Int'l, Inc. v. Alcoa*, No. 06-cv-11913, 2006 WL 2844097, at *3 (E.D. Mich. Sept. 29, 2006). There, the court found that a general choice of law provision in favor of Pennsylvania was not an express waiver of the Carmack Amendment because it was not sufficiently explicit to express an intent to avoid the rights and remedies of the Carmack Amendment. *Id.*

And courts have routinely enforced waivers that do make some reference to the Carmack Amendment. *See Aviva Trucking*, 400 F. Supp. 3d at 79 (collecting cases). Put another way, the Carmack Amendment allows waiver "when [the waiver] expressly appears on the face of the contract provision in question." *Aviva Trucking*, 400 F. Supp. 3d at 79. In support, the *Aviva Trucking* court cited *Sanofi-Aventis U.S., LLC v. Great Am. Lines, Inc.*, No. 10-2023, 2016 WL 4472949 (D.N.J. Aug. 22, 2016) and *Smithfield Beef Group-Tolleson, Inc. v. Knight Refrigerated, LLC*, No. CV 08-1923, 2009 WL 1651289 (D. Ariz. June 12, 2009). In *Sanofi-Aventis*, a New Jersey federal court found the following was an express and therefore valid waiver of the Carmack Amendment: "Pursuant to 49 U.S.C.A. § 14101(b)(1), the parties expressly waive any and all provisions under the ICC Termination Act of 1995, U.S. Code Title 49, Subtitled IV, Part B, and the regulations thereunder to the extent such provisions conflict with the terms of the Transportation Contract or the parties' course of performance hereunder." 2016 WL 4472949, at

7

*2–3. And in *Smithfield Beef*, an Arizona federal court enforced this language as an express waiver: "[T]he parties expressly waive any and all rights and remedies under the ICC Termination Act for the transportation provided hereunder pursuant to 49 U.S.C. § 14101(b)(1)." 2009 WL 1651289, at *2. Both cases expressly cited the statute. Reviewing these authorities and the others cited above, the Southern District of New York concluded that the *Aviva Trucking* parties "expressly waived" the Carmack Amendment because they referenced the statute by citation in their agreement: "[T]he parties expressly waive all rights and obligations allowed by 49 U.S.C. 14101 to the extent [they] conflict with the terms of this contract." *Aviva Trucking*, 400 F. Supp. 3d at 80.

In this case, the parties have not cited any contrary authority, and the Court has found none. JP Graham, in its brief in support of AIT's motion to transfer venue, cites *Scotlynn USA Div., Inc. v. Singh* for the proposition that "the special venue provision did not trump the forum selection clause in the parties' contract." (ECF No. 18, PageID.290 (citing No. 2:15-CV-381, 2016 WL 8679295, at *1 (M.D. Fla. Sept. 9, 2016).) While it is correct to say that the special venue provision does not always trump a forum selection clause, the court in *Scotlynn* concluded its analysis after confirming that the cargo at issue qualified for a waiver under the Carmack Amendment because it was not a shipment of household goods. *Id.* But *Scotlynn* does not quote the language of the forum selection clause at issue and does not discuss any standard to assess a waiver under the Carmack Amendment, so it is not possible to confirm whether the *Scotlynn* court adopted or rejected the analysis of other courts. *Scotlynn* offers an incomplete record to analogize to this case and does not provide a persuasive authority.

So the Court concludes that the rule distilled by the Southern District of New York in *Aviva Trucking* is the correct one. A waiver of rights and remedies under the Carmack Amendment must "expressly" reference the statute in some way "on the face of the contract provision in question."

*Aviva Trucking*, 400 F. Supp. 3d at 79. Applying that rule here, the forum selection clause in AIT's Terms and Conditions does not waive any provision of the Carmack Amendment because it is a generic clause that does not make any reference to the statute. (*See* ECF No. 13-1, PageID.108.)[2]

### C. Broker or Carrier?

AIT attempts to escape this result by arguing that it is a "broker," not a "carrier" subject to the Carmack Amendment. (ECF No. 16, PageID.263–267.) *See Essex Ins. Co. v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, 1300 (11th Cir. 2018) ("The Amendment, however, does not apply to brokers.") (citing 49 U.S.C. § 13102). AIT reasons that if the Carmack Amendment does not apply, then the Court can enforce the Terms and Conditions linked in AIT's email, including the forum selection clause. Both JP Graham and MCM respond that it's too early in the case to decide. These are often fact-intensive inquiries. *Dabecca Nat. Foods, Inc. v. RD Trucking, LLC*, No. 14-CV- 6100, 2015 WL 2444505, at *4 (N.D. Ill. May 20, 2015); *see also Nipponkoa Ins. Co., Ltd. v. C.H. Robinson Worldwide, Inc.*, No. 09 CIV. 2365 PGG, 2011 WL 671747, at *5 (S.D.N.Y. Feb. 18, 2011) ("it is apparent from the case law that the carrier/broker inquiry is inherently fact-intensive and not well suited to summary judgment.").

But, at this stage at least, the Court need not—and probably cannot—decide whether AIT was an exempt "broker" or a covered "carrier." And the Court need not decide whether MCM and AIT assented to the Terms and Conditions linked in AIT's email. This is because either of these

---

[2] Irrespective of the waiver language in the act, numerous other courts have simply "concluded that the Carmack Amendment preempts contractual forum selection clauses." *ICON Health & Fitness, Inc. v. NVC Logistics Grp., Inc.*, No. 16-cv-00167, 2017 WL 2656112, 2017 U.S. Dist. LEXIS 95734, at *8 (D. Utah June 20, 2017); *see also Dabecca Natural Foods, Inc. v. RD Trucking, LLC*, No. 14-CV-6100, 2015 WL 2444505, 2015 U.S. Dist. LEXIS 65680, at *6 (N.D. Ill. May 20, 2015) (finding that "the Carmack Amendment's special venue provision . . . means that the forum selection clause is not enforceable").

possibilities leads to the same result: venue is proper in the Eastern District of Michigan. The Court will explain.

1.

In the first scenario, assume that AIT is a "carrier" covered by the Carmack Amendment. In that case, for reasons just explained, AIT and MCM did not expressly waive any rights or remedies under the Carmack Agreement and the statute applies to their dealing. As a result, the Carmack Amendment's special venue rule applies. The special venue rule offers shippers two options for venues. First, a shipper may sue a "delivering carrier" in a State through which the defendant carrier operates." 49 U.S.C. § 14706(d)(1). The parties agree that JP Graham is the delivering carrier here. *See id.* § 14706(a)(1) ("A delivering carrier is deemed to be the carrier performing the line-haul transportation nearest the destination."). Second and alternatively, a shipper may sue "the carrier alleged to have caused the loss or damage in the judicial district in which such loss or damage is alleged to have occurred." *Id.* § 14706(d)(2).

MCM elected to use the first option and file suit in the Eastern District of Michigan, where JP Graham "operated" by picking up the shipment in Novi, Michigan. (ECF No. 14, PageID.178.) That election is entirely consistent with the terms of the special venue provision. *See Donaldson Tech. Grp. LLC. v. Landstar Ranger, Inc.*, 347 F. Supp. 2d 525, 527 (S.D. Ohio 2004) ("The statute's language places emphasis on the location of the operations of the carrier or the location of the damage to the goods, not the principal place of business of the plaintiff."). And neither AIT nor JP Graham have shown any reason why this would be an incorrect result if AIT is a "carrier."

2.

In the second scenario, assume that AIT is a "broker" not subject to the Carmack Amendment. In that case, MCM withdraws their Carmack Amendment claim and alternatively

10

asserts claims for breach of contract and negligence. (ECF No. 1, PageID.7.) (This Court's subject matter jurisdiction would therefore instead arise from diversity jurisdiction.) The parties agree that in this scenario, the Court should apply the traditional venue transfer analysis under 28 U.S.C. § 1404(a). (*See* ECF No. 13, PageID.79–91; ECF No. 14, PageID.178–191.) The Court agrees and proceeds.[3]

"Federal law, specifically 28 U.S.C. § 1404(a), governs the District Court's decision whether to give effect to the parties' forum selection clause." *Atlantic Marine Constr. Co. v. U.S. District Court*, 571 U.S. 49, 58 (2013) (quoting *Stewart v. Ricoh Corp.*, 487 U.S. 22, 32 (1988)). Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Ordinarily, applying Section 1404(a), "a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Quicken Loans Inc. v. RE/MAX, LLC*, 216 F. Supp. 3d 828, 831 (E.D. Mich. 2016) (citing *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

But "[w]hen the parties have agreed to a valid forum-selection clause," this analysis changes, and "a district court should ordinarily transfer the case to the forum specified in that clause." *Atlantic Marine*, 571 U.S. at 62. "When the parties have agreed to a valid forum-selection

---

[3] Separately, MCM argues that if AIT is a broker, its U.S. Domestic Terms and Conditions would not apply at all because the Terms and Conditions repeatedly use language indicating that they apply only when AIT is functioning as a freight forwarder/carrier. (ECF No. 19, PageID.301–303.) So the Terms and Conditions would have no bearing on the transfer analysis. Because the Court does not weigh the forum selection clause for separate reasons explained below, the Court does not address MCM's argument on this point, at least for now.

clause . . . [o]nly under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id.*

Although *Atlantic Marine* would seem to favor AIT and an Illinois venue, it is not clear that the first premise in *Atlantic Marine* has been met. The parties dispute whether they have agreed to a valid forum selection clause. They even dispute which communications constitute their contract. And the Court hesitates to rule definitively on those matters at this stage of the case. Although the parties have briefed the validity of the forum selection clause and the formation of the contract for purposes of venue, contract formation may have a dispositive effect on at least some of the merits of MCM's claims and AIT's defenses. And those questions are fact-intensive. The Court and the parties will benefit from a complete record, with the assistance of discovery, before ruling on the merits.

Moreover, other courts considering transfer under Section 1404(a) have similarly declined to give full weight to a forum selection clause where the parties disputed its validity in good faith. *See, e.g.*, *Great Lakes Tower, LLC v. Cameron Wire & Cable, Inc.*, No. 2:20-CV-11014, 2020 WL 6685104, at *3 (E.D. Mich. Nov. 12, 2020) (noting that "where a forum selection clause does not appear to apply to the matter, or its validity is uncertain or disputed, the clause may be given less weight or ignored altogether"); *Auto-Wares, LLC v Wisconsin River Co-op Services*, No. 1:09-CV-702, 2010 WL 2508356, at *3 n.3 (W.D. Mich. June 17, 2010) ("The fact that the parties dispute whether . . . forum-selection clause is at issue in this case is, in and of itself, a consideration that significantly decreases the weight that the Court gives the clause."); *Cowden v. Parker & Assocs., Inc.*, No. 5:09-CV-0323, 2010 WL 715850, at *3 (E.D. Ky. Feb. 22, 2010) ("In this case, because the applicability or binding nature of the Agreement to Work Leads is uncertain and disputed, the Court does not factor them into the analysis of the instant motion to transfer venue.");

12

*Sylvester Material, Inc. v. John Carlo, Inc*., 2005 U.S. Dist. LEXIS 9424 at *12, 2005 WL 1176054 (N.D. Ohio May 17, 2005) (explaining that where it is unclear whether a forum selection clause applied to the dispute, the presence of the clause does not favor transfer of the case); *see also* Wright and Miller, 15 Fed. Prac. & Proc. Juris. § 3854.1 (4th ed.), Standard in Considering Transfer, Effect of a Forum-Selection Clause (2020) ("[A forum selection] clause may be ignored as a factor if it does not clearly apply to the action or if its binding nature is uncertain or disputed."). Although nearly all of these cases were decided before the Supreme Court issued *Atlantic Marine* and directed courts to enforce valid forum selection clauses except in the most exceptional circumstances, a genuine dispute regarding the validity of such a clause, which cannot or should not be resolved at the beginning of a civil action, would seem to be precisely the type of exception envisioned by the Supreme Court. And this Court is not aware of any authority to the contrary. So, here, the Court will apply the standard Section 1404(a) analysis for a motion to transfer venue without giving weight to the forum selection clause.

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp*., 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). A district court has "broad discretion" in deciding whether to transfer a case to a different venue. *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009); *see also Ford Motor Co. v. Ryan*, 182 F.2d 329, 331–32 (2d Cir. 1950) (providing that the very nature of the transfer inquiry forces a district judge to make a "guess" about convenience and justice, and "we should accept [her] guess unless it is too wild"). In exercising that discretion, courts often (but are by no means required to) consider the following factors in order to determine convenience and whether transfer is in the interests of justice : (1) the convenience of witnesses;

13

(2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Perceptron, Inc. v. Silicon Video, Inc.*, 423 F. Supp. 2d 722, 729 (E.D. Mich. 2006); *see also Means v. United States Conf. of Cath. Bishops*, 836 F.3d 643, 651 (6th Cir. 2016). The moving party bears the burden of demonstrating that, in light of these factors, fairness and practicality strongly favor transfer. *Perceptron*, 423 F. Supp. 2d at 729 (citation and internal quotations omitted).

Applying the factors here, AIT does not carry its burden to demonstrate that fairness and practicality would strongly favor transfer to the Northern District of Illinois. AIT argues that although repair records are in Michigan, where the machine was manufactured, loaded, and later repaired, the machine is now in South Carolina and each of the parties' records are in their respective home states. (ECF No. 13, PageID.91.) Since written records travel easily, AIT concludes from all of this that the first factor (witnesses), second (access to sources of proof), fifth (availability of compulsory process for unwilling witnesses), and sixth (costs and resources) are "neutral at best." (*Id.*) AIT also suggests that a premises view of MCM's plant in Novi, Michigan, or view of damage to the machine, or the accident site (in South Carolina) are likely unnecessary, indicating another reason why the factors do not weigh in favor of Michigan over Illinois. (*Id.*) But other than the forum selection clause, which this Court will not weigh for the reasons explained above, AIT does not give any reason why the Section 1404(a) factors weigh *in favor* of transfer. (*See* ECF No. 13, PageID.90–91; ECF No. 16, PageID.268–269.) This alone is sufficient to deny the motion, given that AIT has the burden. *See Perceptron*, 423 F. Supp. 2d at 729.

And even if the Court considers MCM's arguments in opposition to transfer, MCM persuasively argues that fairness and practicality do not strongly favor transfer. Under the first factor, as MCM argues, because the key questions of fact in this case are "(1) whether AIT's Terms and Conditions and/or its purported limitation of liability were part of the parties' contract; and (2) the amount of MCM's damages, evidenced by the extent of the repair costs," the key witnesses are Scott Ranspach of AIT and Jason Stump of MCM, who exchanged the emails and negotiated the contract. (ECF No. 14, PageID.188.) And all of the the MCM employees who assessed and repaired the machine are in Michigan, where the repairs took place. (*Id.*) Courts treat the residence of "key witnesses" as more important than the "raw number" of witnesses in a given district. *Audi AG v. D'Amato*, 341 F. Supp. 2d 734, 750 (E.D. Mich. 2004). Here, both the "key" witnesses and the raw number appear to weigh in favor of staying in the Eastern District of Michigan. So the first factor weighs in favor of staying in Michigan. This also places all but one of the key witnesses within the subpoena power of this district, giving weight to the fifth factor.

Next, the Court agrees with AIT that other sources of proof appear to be easily shared through electronic discovery, so the second factor is neutral. The third factor, the convenience of the parties themselves, is also neutral: AIT is in Illinois, MCM is in Michigan, and JP Graham is in Pennsylvania, and none of the parties have identified any unique hardship. As JP Graham notes, "With one party in Michigan (MCM), one in Illinois (AIT), and one in Pennsylvania (JPG), there is no venue which is practically more convenient than any other." (ECF No. 18, PageID.291.) The fourth factor is also more or less neutral, or perhaps weighs slightly in favor of Michigan, because the operative facts took place by email between employees in Illinois and Michigan, and then in Michigan during repairs. (And the Court would be surprised if Defendants maintain a position that inspection of the machine is unnecessary.) Sixth, all parties are business entities and none have

15

identified a particular inconvenience regarding their resources. Seventh, the governing law in this case will be determined when contract formation is settled. This factor is neutral at this time, but this Court can ably apply Illinois law should AIT's Terms and Conditions be found to control the dispute. Eighth, some weight is accorded to MCM's choice of forum when it filed this suit. A plaintiff's choice of forum is given "substantial deference" unless it faces an otherwise "well-founded motion for change of venue" or the plaintiff has "little or no connection to the chosen forum." *Audi AG & Volkswagon of Am., Inc. v. D'Amato*, 341 F. Supp. 2d 734, 749–50 (E.D. Mich. 2004) (citations omitted). In this case, AIT's motion for change of venue is not well-founded and MCM *does* have significant connection to its chosen forum, with headquarters and relevant operations here. Finally, the ninth factor, which is trial efficiency and the interests of justice based on the totality of the circumstances, is otherwise neutral.

Based on these factors, the Court finds that AIT has not carried its burden to show that, in light of these factors, fairness and practicality strongly favor transfer. Other than the forum selection clause, which the Court will not enforce today because its validity is subject to good faith dispute and overlaps with dispositive questions of fact that are premature at this stage of the proceedings, AIT has not identified any factors under Section 1404(a) that would weigh in favor of transfer. Meanwhile, MCM has persuasively argued that all of the factors are either neutral or weigh in favor of maintaining the action here in the Eastern District of Michigan.

Thus, even if the Court were to rule that AIT is a broker for purposes of this action—a question the Court does not decide in this opinion—AIT has not met its burden for transfer under Section 1404(a) and the statute counsels in favor of retaining jurisdiction. AIT's motion for transfer to the Northern District of Illinois is denied.

### III.  The Motion to Dismiss

In the alternative, AIT moves to dismiss MCM's complaint under Rule 12(b)(6) for failure to state a claim. (ECF No. 13, PageID.92.) The only ground AIT raises for dismissal is, again, the forum selection clause. AIT cites this rule: "On a motion pursuant to Rule 12(b)(6), the court only needs to determine whether the forum selection clause is enforceable and applicable; if it is, then the suit should be dismissed." *Transp. Sys., LLC v. Amazon*, No. 18-CV-11286, 2018 WL 5043726, at *2 (E.D. Mich. Oct. 17, 2018) (quoting *Bracken v. DASCO Home Med. Equip., Inc.*, 954 F. Supp. 2d 686, 694 (E.D. Mich. 2013).

AIT is not entitled to dismissal by this route either. On a motion under Federal Rule of Procedure 12(b)(6), the Court "construes the complaint in the light most favorable to the plaintiff, accepts the plaintiff's factual allegations as true, and determines whether the complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Accordingly, the Court must accept MCM's allegations as true, not AIT's. MCM alleges that the parties' contract was exclusively oral. (ECF No. 1, PageID.3). Formation of an oral contract is a question of fact under both Michigan and Illinois law. *See Dassance v. Nienhuis*, 225 N.W.2d 789, 794 (Mich. Ct. App. 1975); *In re Estate of Kern*, 491 N.E. 2d 1275, 1280 (Ill. App. 1986) (stating that "whether an oral contract exists, its terms and conditions and intent of the parties are questions of fact"). So the Court cannot consider AIT's view of the facts at this stage; it can only accept MCM's factual allegations as true. Because the formation of the parties' contract, including the forum selection clause, raises questions of fact, the Court cannot conclude that AIT's forum selection clause is valid and enforceable as a matter of law.

As a result, dismissal under Rule 12(b)(6) is not warranted. The Court therefore denies AIT's alternative motion to dismiss.

## IV. Conclusion

For these reasons, the Court DENIES AIT's motion to transfer venue to the Northern District of Illinois and AIT's alternative motion to dismiss under Rule 12(b)(6). (ECF No. 13).

SO ORDERED.

Dated: March 31, 2021

>                   s/Laurie J. Michelson
>                   LAURIE J. MICHELSON
>                   UNITED STATES DISTRICT JUDGE